IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JOHN NEW, JR.
    Plaintiff/Petitioner    )
    )
    )
-VS-    )
    )
    )
BRIAN THOMAS, SHAUN JUMPER,    )
DARRELL SANDERS, JOSEPH PROCTOR,    )
DIANE DOBIER, SALLY HOUGAS,    )
TARRY WILLIAMS, LIBERTY HEALTH    )
CARE CORPORATION, AND VARIOUS    )
DEFENDENT(S), THAT WILL BE NAMED    )
UPON THE DISCOVERY OF THEIR IDENTITIES    )
    Defendent/Respondent(s).    )

Case No. 07-3147

CIVIL RIGHTS COMPLAINT
Pursuant to 42 U.S.C. § 1983
(State Detained/Prisoner )

## CIVIL RIGHTS COMPLAINT
## WITH A JURY DEMAND

This is a § 1983 action filed by **John New, Jr.,** a State Detained/Prisoner alleging violations of his Constitutional Rights and he is seeking money damages, declaratory judgement, and EMERGENCY INJUNTIVE RELIEF. The Plaintiff request a trial by jury.

### I.    JURISDICTION

A.    The jurisdiction of this Court is invoked pursuant to **28 U.S.C. § 1331** as this action arises under the Constitution and Laws of the **United States**, and pursuant to 28 **U.S.C. § 1343 (a)(3)** as this action seeks redress for Civil Rights violations under 42 U.S.C. § 1983.

B.    Plaintiff's mailing address and/or registered number and place of confinement: John New, Jr., registered number # 863120, Illinois Department of Human Services, Rushville (TDF) Treatment and Detention Facility, R.R. 1, Box 6A, Rushville, Illinois 62681.

C.    Defendant    BRIAN THOMAS                              is employed as
                   ( Name of First Defendant)

ACTING FACILITY DIRECTOR FOR THE ILL DEPT OF HUMAN SERVICES, TREATMENT FACILITY
                        (Position/Title
ILLINOIS DEPARTMENT OF HUMAN SERVICES, TREATMENT AND DETENTION FACILITY
COUNTYFARM LINE ROAD AND HORNEY BRANCH ROAD, R.R. 1, BOX 6A, RUSHVILLE, ILL 62681
                   (Employers Name And Address)

D.    At the time claim(s) alleged in this complaint arose, was the
      the defendant employed by the state, local or federal government ?

                        Yes  (XX)          No  (  )

      If your answer is "yes", briefly explain :

      At all times relevant to the claim's that are alleged in this
      complaint the defendant that is named in paragraph (C) was and
      remains the Acting Facility Director for the Illinois Department
      of Human Services, at it's Treatment and Detention Facility for
      Sexually Violent Persons, a State of Illinois Facility, that is
      duly organized under and by virtue of the laws of the State of
      Illinois.  This defendant is hereby being sued in his individual
      and his personal capacity.

E.    Defendant          SHAUN JUMPER                        is employed as
                   (Name of Second Defendant)

                        CLINICAL DIRECTOR
                        (Position/Title)
ILLINOIS DEPARTMENT OF HUMAN SERVICES, TREATMENT AND DETENTION FACILITY
COUNTYFARM LINE ROAD AND HORNEY BRANCH ROAD, R.R.1, BOX 6A, RUSHVILLE, ILL 62681
                   (Employers Name And Address)

F.    At the time the claim(s) alleged in this complaint arose, was
      the defendant employed by the state, local or federal government ?

                        Yes  (XX)          No  (  )

      If your answer is "yes", briefly explain:

      At all times relevant to the claim's that are alleged in this
      complaint the defendant that is named in paragraph (E) was and
      remains the Clinical Director for the Illinois Department of
      Human Services, at it's Treatment and Detention Facility for
      Sexually Violent Persons, a State of Illinois Facility, that is
      duly organized under and by virtue of the laws of the State of
      Illinois.  This defendantis hereby being sued in his individual
      and his personal capacity.

G.    Using the outline of the form provided.  Include the above information for any additional defendant(s).

H.    The below named defendant(s) are employed at the Treatment and Detention Facility for Sexually Violent Persons, which is a State Agency within the Illinois Department of Human Services, said facility is duly organized under and by virtue of the laws of the State of Illinois and is located at the address of Countyfarm Line Road and Horney Branch Road, Rural Route 1, Box 6A, Rushville, Illinois 62681.  These named defendant(s) are here by being sued in their individual and their personal capacity.

1.    DARRELL SANDERS, at all times relevant to the claim's alleged in this complaint, was and remains the Director of Security, he directly employed with the Illinois Department of Human Services, at the Treatment and Detention facility, located at the above said address.

2.    JOSEPH PROCTOR, at all times relevant to the claim's alleged in this complaint was and remains a Clinical Treatment Leader and Rooming Committee Member at the Treatment and Detention facility, he directly employed by Liberty Health Care Corporation, which is a subcontractor for the Illinois Department of Human Services.

3.    DIANE DOBIER, at all times relevant to the claim's alleged in this complaint was and remains a Clinical Treatment Leader and Clinical Therapist, at the Treatment and Detention facility, she directly employed by Liberty Health Care Corporation, which is a subcontractor for the Illinois Department of Human Services.

4.    LIBERTY HEALTH CARE CORPORATION, at all times relevant to the claim's alleged in this complaint was and remains a subcontractor for the Illinois Department of Human Services, contracted to provide Sex Offenders Treatment for those pre-trial detained persons who request such, and for persons who have been Committed as a Sexually Violent Persons and placed in a secure facility under 725 ILCS 207/50., of the Illinois Sexually Violent Persons Act.  The Illinois Department of Human Services are located at the above address said.

All of the above said Defendant(s) are hereby being sued in their individual and their personal capacity.

4. **SALLY HOUGAS**, at all times relevant to the claim's alleged in this complaint was and remains a Security Therapist Aid, with the rank and/or Title of Sergeant STA II, she directly employed with the Illinois Department of Human Services, at the Treatment And Detention facility, located at the above said address.

5. **TARRY WILLIAMS**, at all times relevant to the claim's alleged in this complaint was and remains a Security Therapist Aid, with the rank and/or Title of Captain Executive IV, he directly employed with the Illinois Department of Human Services, at the Treatment And Detention facility, located at the above said address.

All of the above said Defendant(s) are hereby being sued in their individual and their personal capacity.

## II.    PREVIOUS LAWSUIT

A. Have you begun any other lawsuits in State or Federal Court relating to your detention and/or imprisonment ?   **Yes  (XX)    No  (   )**

B. If your answer to "A" is "yes", describe the lawsuit(s) in the space below.  (If there is more than (1) lawsuit, you must describe the additional lawsuits on an addititional sheet of paper, using the same outline.) Failure to comply with this provision may result in summary dismissal of your complaint.

1. **Parties To Previous Lawsuit:**

   Plaintiff: John New
   Defendant(s): Jack Hartwig, et al.

2. Court (If Federal Court, name the district; if State Court, name the County).  United States District Court For The Southern District of Illinois.

3. Docket Number: 99-744-WLB.

4. Name of Judge to whom case was assigned: Honorable G. Patrick Murphy

5. Type of case ( For example; was it a Habeas Corpus or Civil Rights Action ? ) This was a Civil Rights Complaint, Pursuant to 42 U.S.C. § 1983.

6. Disposition of case:  This case was dismissed with prejudice.

7. Approximate date of filing lawsuit:  October 4, 1999.

8. Approximate date of disposition:  December 4, 2001.

9.  **Parties To Previous Lawsuit:**

    Plaintiff:  John New

10. Defendant(s):  Thomas Monahan, et al.

11. Court ( If Federal Court, Name the district; if State Court,
    name the County ). United States District Court For The Northern
    District of Illinois.

12. Docket number:  06-C-0017.

13. Name of Judge to whom case was assigned:  Honorable Joan B. Gottschall.

14. Type of case ( For example; was it a Habeas Corpus or Civil Rights ? )
    This was a Civil Rights Complaint, Pursuant to 42 U.S.C. § 1983.

15. Disposition of case:  case is still pending.

16. Approximate date of filing lawsuit:  February 16, 2006.

17. Approximate date of disposition:  _____ N/A _____ .


## III.  GRIEVANCE PROCEDURE

A.  Is there a grievance procedure in the institution ?

                    Yes  (XX)      No  (    )

B.  Did you present the facts relating to your complaint in the
    institution grievance procedure ?

                    Yes  (XX)      No  (    )

C.  If your answer to "B", is "yes", briefly explain:

1.  What steps did you take ?  I filed an institutional grievance reguarding
    the issues that are complained of in this Civil complaint, each individual
    issue that is named described and complained of herein has been formally
    fully grieved.


2.  What was the results ?  My grievances was summarily denied by the
    Grievance Officer and Brian Thomas.


D.  Plaintiff aver that he has written letters to the individual
    administrative officials and that he has spoken verbally with them
    and all of plaintiff's efforts has been completely ineffective.

E.    Attached hereto are copies of the plaintiff's grievances and other attached documents to be used as exhibits of evidence

## IV.    STATEMENT OF CLAIMS

The facts necessary to an understanding of this issues that are presented by this civil complaint are set fourth as follows:

### COUNT    I

A.    Plaintiff, John New, Jr., aver that he is currently a Civil Pre-trial Detainee, domiciled at the Illinois Department of Human Services, Rushville (TDF) Treatment and Detention Facility, for the Illinois Department of Human Services, thus it is a State of Illinois facility, duly organized under and by virtue of the laws of Illinois.

B.    Plaintiff aver that on the date of June 19, 2006, he was transported from the Old Joliet Annex Prison building, in where the Illinois Department of Human Services, Treatment and Detention facility was located at, to this present location, plaintiff aver that he was immediately placed into the population at the Treatment and Detention facility, with committed people, people who are called residents, and have been adjudicated by the Courts, as being people who suffers from a mental disorder.

C.    Plaintiff aver that on the date of October 6, 2006, Administrative Officials here at the (TDF) Treatment and Detention facility tried to force me into a cell with a Committed person, who has a known history of physically assaulting his cellmates, while Plaintiff refused to move into this Committed person's room, Plaintiff was subjected with punishment by placing him on a Maximum Security Unit, while plaintiff at the time, had no disciplinary reports written in his Residental Clinical File.  Plaintiff then filed a Institutional Grievance stating that the Administrative Officials of this facility, punished him by placing him on a Maximum Security Unit for a ( 121 ) days, from October 6, 2006, to January 27, 2007., simply because plaintiff refused to be housed in a cell with a Committed person, in accordance with Title 59 of the Illinois Administrative Code, 299.200, which clearly states that Civil Pre-Trial Detain persons must be kept seperate from Committed persons.

D.    Plaintiff aver that as a direct and proximate result of him refusing to move into a cell with a Committed person, plaintiff was continued to be subjected to a systemactic form of punishment, designed and drafted specifically by the Administrative Officials, Plaintiff aver that the defendant(s) Tarry Williams and Joseph Proctor, who are members and or connected with the cell assignments committee at the Treatment and Detention facility, and as there policy residents who have been adjudged to be Sexually Violent Persons, and Pre-Trial detained persons who have not been adjudge as being Sexually Violent are all housed together in the Rushville (TDF) Treatment and Detention facility if they will not sign there name to a consent to treatment form and attend group treatment sessions, Plaintiff aver that as a pre-trial detained person who maintains and asserts that he is not a Sexually Violent Person, that he has an absolute right to a trial to prove that he is not a Sexually Violent Person, without being subjected to punishment designed by the defendant(s) for the purpose of forcing the plaintiff by means as described herein to consent to treatment for Sexually Violent persons and thus as in the United States Supreme decision in Hendricks, who ask for treatment, Plaintiff himself will have unwillingly asked for treatment and he will have lost his rights to a fair trial.  Plaintiff aver that defendant(s) as named herein has a policy designed to allow for and to relocate those residents and pre-trial detained persons who have signed there names to a consent to treatment form and attend group treatment sessions for Sexually Violent Persons, access to choose who they want to room with as potiental roommates, while Civil Pre-Trial Detainees are subjected to acts of retaliation and reprisals, Plaintiff and other pre-trial detained persons similary situated as the plaintiff, are force to live in an over-crowded cells, with committed persons.  While the defendant(s) are now in direct contempt of Court, in which the defendant(s) agreed in a recent Court settlement with this Court to prohibit punishment of any form, Plaintiff aver that the agents acting for Liberty Health Care Corporation, allows for none credential employee staff, known as Security Therapist Aides, [ S.T.A.'s ], to have complete access to pre-trial detainees records and files, and allows these said employee staff to write fraudulent reports on detained persons for the purpose of providing false information to assure civil commitment at the trial of a detained person, in the financial interest of Liberty Health Care Corporation, and thus Liberty Health Care Corporation financial interest being involved as it is, is a conflict of interest for pre-trial detained persons.

COUNT II

E.      That the plaintiff suffers from a chronic arthritis condition that
causes extreme and excruciating pain to the plaintiff, and that Administrative
Staff Employee [ Sally Hougas ], who told Plaintiff that he does not hava a
Low Bunk Bed Permit, by [ Dr, Joseph Proctor ], and threaten plaintiff with
taken him back to Special Management, better known as [ Administrative Segregation ]
because Plaintiff was just released from Special Management on April 27, 2007 at
2:00pm, because on the date of April 25, 2007, Plaintiff was taken to Special
Management, because Plaintiff refused housing, after [ Captain Executive II
Tarry Williams ], who is one of the members of the Rooming Committee, fabricated
a False Resident Rooming Request stating that Plaintiff requested to move into
a cell with another resident, who at the time, Plaintiff did not know that Plaintiff's
new assigned cellmate, is a Pre-Trial Detained person, such as he is.  Nonetheless,
Sgt, Sally Hougas who also sits on the Behavior Management Committee, along with
Dr. Joseph Proctor and Dr. Diane Dobier, who are also members of the Behavior
Management Committee, had written a fraudulent disciplinary report, stating that
Plaintiff had violated a Rule infraction by refusing to lock-up for the facility
count, creating a Major Disturbance.   However that statement was false, because
Plaintiff was taken to Special Management at 8:50a.m., the morning of April 25, 2007
for refusing to move over to Housing Unit Alpha 1, Room 11.   While just previously
stated back to February 8, 2007, Plaintiff was taken to the University of Illinois
at Chicago Medical Center, to do a [ M.R.I. ] on Plaintiff's neck and back, to see
if Plaintiff sustained any nerve damage, in which in a Medical Report by the Chief
Surgeon, Dr. James A. Stone, Professor of Neurosurgery and Neurology, stated in
a written report to the Prinary Care Physician of the Rushville Treatment and
Detention Facility [ Dr. Jovita Anyanwu ], that was sent to him by via Fax machine
on March 1, 2007, Plaintiff needs corrective surgery to relieve the presure in
Plaintiff's lower back, neck, shoulder, arm and hand, hand on Plaintiff's left
side, which at times, Plaintiff's entire left side of his body be in a Parlyze
state, at numerous times, Plaintiff be in a state of Paralysis.  In which the
Primary Care Physician [ Dr. Anyanwu ] issued a Low Bunk Bed Permit to Plaintiff
first on February 6, 2006, because Plaintiff cannot climb up to the Top Bunk,
which would in terms aggregates Plaintiff's spinal cord, in which a bone is
lodged directly into Plaintiff's  C-3 Verebrete, which makes it high impossible
for the Plaintiff to climb into a Top Bunk.  However Administrative Staff personnel
( Security Staff ) fail to acknowledge that Plaintiff has a Low Bunk Permit, while
on April 27, 2007, Sgt. Sally Hougas told Plaintiff that he refused to go into the

with his new assigned cellmate, that she personally was going to take Plaintiff
back down to Special Managment and lock Plaintiff back up, for refusing to move
into the newly assigned cell, that the Rooming Committee told Plaintiff that he
had to move into.   Although after Plaintiff tried pleading with Sgt. Hougas,
stating that it was not his job to tell Plaintiff's new cellmate, that he would
have to move his mattress and place it on the top bunk, because Plaintiff told
Sgt. Hougas that it was her job, because she is Security, and Plaintiff stated
that he did not want to start an altercation with his new cellmate, because of
Plaintiff's medical condition, and that Plaintiff must be placed on the Bottom
Bunk, to relieve any stress of aggravating the nerves in Plaintiff's spinal cord.


## V.   RELIEF


WHEREFORE, plaintiff request that the Court grant the following
relief:

A.   Issue a declaratory judgement stating that:
That the defendants' Brian Thomas, Shaun Jumper, Darrell Sanders,
Joseph Proctor, Diane Dobier and Sally Hougas, violated the Plaintiff's
and all other residents' and Pre-Trial detainee's similarly situated
as the plaintiff when they deliberately caused the forced housing
of Pre-trial detained persons with committed people and force them
to live in animal like conditions if they refuse to ask for Sex
Offenders Treatment and thereby give up their rights to a fair
Civil Commitment Trial.

B.   To have Plaintiff remain on Housing Unit [ Alpha 1 ], without placing him
in a cell with a roommate, unless Plaintiff signs in writting that he
is requesting for a certain individual/resident that he can trust, to
be placed in a assigned cell with him, over on Housing Unit [ Alpha 1 ].

C.   That defendants' Brian Thomas, Shaun Jumper, Darrell Sanders,
Joseph Proctor, Diane Dobier and Sally Hougas, and each of their
officers, agents, employers, and all persons acting in concert
or participation with them, from lauching acts of Retailiation
or reprisals for the filing of this Civil Action Complaint

D.      Issue an injuction ordering the Health Care Administrator to
        write a permanent Low Bunk Permit to Plaintiff, so Plaintiff
        would never have to endure these atrocies again, of being forced
        to climb up to a Top Bunk, due to Plaintiff's serious medical
        condition.

E.      Award Compensatory Damages in the following amounts :

1.      $ 10,000  jointly and severaly against the defendants Thomas,
        Jumper, and Sanders, for forcing Plaintiff to endure these atrocies
        by their subordinates. the plainti

2.      $ 10,000  jointly and severaly against the defendants' Proctor,
        Dobier and Hougas for falsifying Behavior Committee Incident Report
        of Plaintiff, and ignoring Plaintiff's serious medical condition of
        forcing Plaintiff to climb up to a Top Bunk, acting in deliberate
        indifference to Plaintiff's serious medical condition.

F.      Award punitive damages in the following amount :

1.      5,000  from each named defendant in this Civil complaint.

G.      Grant such other relief as it may appear that the Plaintiff
        is entitled, for this is so prayed for.


[ DATE ]_____


Respectfully Submitted by:

_____
John New, Jr. Reg No.# 863120
Illinois Department of Human Services,
Treatment and Detention Facility
Rual Route 1, Box 6A
Rushville, Illinois 62681

SUBSCRIBED AND SWORN TO BEFORE ME

This 8 day of May 2007

_____
N O T A R Y   P U B L I C

OFFICIAL SEAL
SANDRA J. HAYS
COMMISSION NO. 655223
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-11-2010

*ORIGINAL*



**DEPARTMENT OF HUMAN SERVICES**

**TREATMENT AND DETENTION FACILITY**

## NOTICE OF APPEARANCE BEFORE THE BEHAVIOR COMMITTEE

Resident: New, John                    DHS# 863120

Date and Time of Incident: 2-9-07 approximately 11:45am

Nature of Incident/Potential Rule Violation: On the above date and time, resident New refused to lock up for facility count.

This notice is to inform you that the Behavior Committee will be meeting to review the incident mentioned above. This meeting is scheduled to occur on 2-13-07 or later, between the hours of 10:00 AM and 3:00 PM.

You will be contacted by security staff during this time frame. You will be asked if you wish to appear before the Behavior Committee. Attendance at a Behavior Committee meeting is optional. If you do plan to attend, please be prepared to appear when called to do so. You may present written documentation (i.e.: your own account of incident, witness statements, etc.) and discuss the circumstances surrounding this incident. Upon determination that a resident has violated a rule, the Behavior Committee shall determine appropriate management status, determine appropriate treatment recommendations, impose behavioral restrictions or any combination thereof.

My signature below indicates that I have received notification of my scheduled appearance before the Behavior Committee.

_____                    2/12/07
Resident Signature                                 Date

_____                    2/12/07
Staff Signature                                    Date

Date Notified: 2/12/07          Time Notified: 10:28

ILLINOIS DEPARTMENT OF HUMAN SERVICES
TREATMENT & DETENTION FACILITY

# BEHAVIOR COMMITTEE MEETING
## INITIAL

NAME: New, John     DHS#: 863120     DATE OF INITIAL MEETING: 02/13/07

DATE OF ADMISSION: 7/26/05   MANAGEMENT STATUS: Temp Secure ( Int A)   PRIMARY THERAPIST: Palac

Date Of Event: 2-9-07 approximately 11:45am

Description Of Event: On the above date and time, resident New refused to lock up for facility count.

Resident Addressed Behavior Committee: (Yes)/No   Received 24 hour notification: (Yes)/No.  Waived notification Yes/No/NA

Resident Comments: Previous day went to UIC for medical, + I found out
I was getting a room mate. Then put him in my room
while I was gone. They asked new to give them 12 hrs to
deal w/ the chores. I am willing to go back to my
room now w/ a room mate. You have my word.

Behavioral History for the past six months: No behavior incidents in the past six months.

Determination Of Rule Violation: Major — Create a Disturbance - refusing to
lock up.

Treatment Recommendation (if none, reason): Resident advised to discuss concerns
with primary therapist

Committee Decision: Major Rule Violation — drop one RM Status.
Return to same room with Roommate and await
Rooming Committee Decision.

SIGNATURES: Dobrel RP                         TITLES: Team Leader
            JWProctor PsyD                            Team Leader
            Palac                                     Staff

DATE OF REVIEW: N/a

cc: Primary Therapist, Facility Director, Clinical Director, Associate Clinical Director; Security Director, Secure Management Log,
Unit Directors, Internal Investigator, Vocational Director, Administrator On Duty and Resident

Revised: 06/30/04

State of Illinois
Department of Human Services

## TDF Resident Grievance

| Name of Resident: John New Jr | ID #: 863120 | Date of Incident Occurrence: 2-9-07 | Unit: A-2-1 |
|---|---|---|---|

| Date Received 03-01-07 P05:34 IN | Grievance # 03 07 GR 0185 |
|---|---|

Nature of Grievance

☐ Personal Property  ☐ Staff Conduct  ☐ Mail Handling  ☐ Meals  ☐ Medical  ☑ Other: (Specify) ROOMING COMMITTEE

☑ Disciplinary Report:    Report Date: 2-9-07

(Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision.)

Use only this form to give a BRIEF Summary of Grievance:

I, the above named resident, submit this grievance to grieve the acts of Reprisals and Retaliatory tactics by the Resident Rooming Committee, of trying to force me to live in a room with a Committed person...

On February 8, 2007, while I was on a Medical Writ, up to U.I.C. Medical Center in Chicago, the Rooming Committee made a very "INCORRIGIBLE DECISION" by placing Resident Grey Morris, a person who smokes cigarettes, in my assigned room, while I was not present, or I wasn't even in the Facility at the time..

I it is documented in the Health Care Unit, in my Medical File, that I do not smoke cigarettes anymore, and the Rooming Committee did not even take into consideration of my health, of me breathing 2nd hand smoke, etc..

Relief Requested:

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Resident Signature: _____    Date: 2-26-07

IL462-5001 (R-6-06)    Distribution:  Master File; Resident    Page 1 of 2

State of Illinois
Department of Human Services

# TDF Resident Grievance



Grievance Examiner's Response:

Grievance Examiner's Signature: _____       Date: _____

Date Received: _____

## FACILITY DIRECTOR'S RESPONSE

Facility Director's Decision: Grievance: ☐ Upheld      ☐ Denied

Behavior Committee Decision Appeal: ☐ Upheld      ☐ Denied

Response:

Facility Director Signature: *See page 4 of 4*       Date: _____

NOTE: If appealing the Facility Director's Decision, please attach the Grievance Appeal Form and forward to Grievance Examiner

Date Received: _____

## PROGRAM ADMINISTRATOR'S RESPONSE

Program Administrator Concurs With The Facility Director's Decision: ☐ Yes    ☐ No

Response:

Program Administrator Sigature: _____       Date: _____

462-5001 (R-6-06)

Distribution: Master File; Resident

State of Illinois
Department of Human Services

## TDF Resident Grievance

| Name of Resident: John New, Jr | ID #: 863120 | Date of Incident Occurrence: 2-9-07 | Unit: A-2-1 |
|---|---|---|---|

| Date Received | Grievance # 03 07 GR 0185 |
|---|---|

**Nature of Grievance**

☐ Personal Property  ☐ Staff Conduct  ☐ Mail Handling  ☐ Meals  ☐ Medical  ☑ Other: (Specify) ROOMING COMMITTEE

☑ Disciplinary Report:    Report Date: 2/9/07

(Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision.)

Use only this form to give a BRIEF Summary of Grievance:

Also, the Administration is presently aware that I have filed numerous grievances in the past about Title 59, Ill Admin Code, 299.200, which clearly states that: Pre-Trial Civil Detained persons and Civilly Committed persons are to be kept separate and not be housed together.

Now this was stipulated to Facility Director ( Thomas Monahan) on 5/26/06, and again on 6/10/06, in a Correspondence letter from Resident New's Attorney ( Kim R. Kardas) stating to him about Resident New current Injury conditions, etc...

However, I have sent numerous Resident Rooming Requests to the Rooming Committee, Mr. Tarry Williams, Mr. Guy Groot, Dr. Joseph Proctor, and Security Director ( Mr. Darrell Sanders)

Stating to these gentlemen, that myself and Resident Arnold Roberts, who submitted numerous Rooming Requests to the Rooming Committee, ever since 2/23/06.

Relief Requested:

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Resident Signature: John New Jr | Date: 2-26-07 |
|---|---|

IL462-5001 (R-6-06)          Distribution:  Master File; Resident          Page 1 of 2

State of Illinois
Department of Human Services

# TDF Resident Grievance



Grievance Examiner's Response:

Grievance Examiner's Signature: _____    Date: _____

Date Received: _____ FACILITY DIRECTOR'S RESPONSE

Facililty Director's Decision: Grievance: ☐ Upheld    ☐ Denied

Behavior Committee Decision Appeal: ☐ Upheld    ☐ Denied

Response:

Facility Director Signature: _See page 4 of 4_    Date: _____

NOTE: If appealing the Facility Director's Decision, please attach the Grievance Appeal Form and forward to Grievance Examiner

Date Received: _____ PROGRAM ADMINISTRATOR'S RESPONSE

Program Administrator Concurs With The Facility Director's Decision: ☐ Yes    ☐ No

Response:

Program Administrator Sigature: _____    Date: _____

L462-5001 (R-6-06)    Distribution:  Master File; Resident

State of Illinois
Department of Human Services

# TDF Resident Grievance

| Name of Resident: John New, Jr | ID #: 863120 | Date of Incident Occurrence: 2/9/07 | Unit: A-2-1 |
|---|---|---|---|

| Date Received | Grievance #: 03 07 GR 0185 |
|---|---|

**Nature of Grievance**

☐ Personal Property ☐ Staff Conduct ☐ Mail Handling ☐ Meals ☐ Medical ☑ Other: (Specify) ROOMMING COMMITTEE

☑ Disciplinary Report:   Report Date: 2/9/07

(Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision.)

Use only this form to give a BRIEF Summary of Grievance:

Nonetheless Resident Roberts, who is not a person who smokes cigarettes, is also forced to live with a person who is a cigarette smoker...

And that's why the both of us, filled out Resident Rooming Requests to the Rooming Committee, stating that the both of us, would like to become roommates with one another, since neither of the both of us smoke, period..

However, since the Rooming Committee has totally ignored all of my Rooming Requests to be placed in a non-smoking room with Resident Roberts who is also a non-smoker...

My present health is in serious jeopardy, from constantly breathing in the 2nd Hand cigarette smoke from Resident Morris, my current roommate..

Relief Requested:

☑ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreperable harm to self.

Resident Signature: John New Jr                Date: 2-26-07

IL462-5001 (R-6-06)          Distribution:  Master File; Resident          Page 1 of 2

State of Illinois
Department of Human Services

# TDF Resident Grievance



Grievance Examiner's Response:

Grievance Examiner's Signature: _____    Date: _____

---

Date Received: _____    FACILITY DIRECTOR'S RESPONSE

Facililty Director's Decision: Grievance: ☐ Upheld    ☐ Denied

Behavior Committee Decision Appeal: ☐ Upheld    ☐ Denied

Response:

Facility Director Signature: _See page 4 of X_    Date: _____

NOTE: If appealing the Facility Director's Decision, please attach the Grievance Appeal Form and forward to Grievance Examiner

Date Received: _____    PROGRAM ADMINISTRATOR'S RESPONSE

Program Administrator Concurs With The Facility Director's Decision: ☐ Yes    ☐ No

Response:

Program Administrator Sigature: _____    Date: _____

IL462-5001 (R-6-06)    Distribution: Master File; Resident    Page 2 of 2

State of Illinois
Department of Human Services

# TDF Resident Grievance

| Name of Resident: John New, Jr | ID #: P63120 | Date of Incident Occurrence: 2/9/07 | Unit: A-2-1 |
|---|---|---|---|

| Date Received | Grievance #: 03 07 GR 0185 |
|---|---|

Nature of Grievance

☐ Personal Property ☐ Staff Conduct ☐ Mail Handling ☐ Meals ☐ Medical ☑ Other: (Specify): ROOMING COMMITTEE

☑ Disciplinary Report:    Report Date: 2/9/07

(Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision.)

Use only this form to give a BRIEF Summary of Grievance:

In which poses a "SUBSTANTIAL RISK OF SERIOUS HARM, and the Rooming Committee acted with deliberate indifference to that risk.

And that's why I refused housing on 2/9/07, and was taken to Special Management, because I refused to be housed in a same room with (1): A person who smokes cignettes, and (2) A Civilly Committed person, in which I am not.

While the Behavior Committee on 2/13/07, drop me down to B grade status for something that I had a right to refuse to be placed in a room with a smoker, but still I was punish because I exercise my Constitutional rights.

Relief Requested: (1) THAT THE ROOMING COMMITTEE PLACE ME AND RESIDENT ARNOLD ROBERTS AS ROOMMATES TOGETHER IN A NON-SMOKING ROOM (2) THAT THE BEHAVIOR COMMITTEE DECISION BE TOTALLY EXPUNGE FROM MY CLINICAL FILE. (3) THAT I BE PLACED BACK INTO INTERMEDIATE "A" GRADE STATUS

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Resident Signature: _____    Date: 2-26-07

IL462-5001 (R-6-06)    Distribution:  Master File; Resident    Page 1 of 2

State of Illinois
Department of Human Services

# TDF Resident Grievance



Grievance Examiner's Response:

Grievance Examiner's Signature:                                                                                  Date:

Date Received:  3-28-07                          FACILITY DIRECTOR'S RESPONSE

Facililty Director's Decision: Grievance: ☐ Upheld    ☑ Denied

Behavior Committee Decision Appeal: ☐ Upheld    ☑ Denied

Response:

Facility Director Signature:                                                                                  Date:  3-28-07

NOTE: If appealing the Facility Director's Decision, please attach the Grievance Appeal Form and forward to Grievance Examiner

Date Received: _____    PROGRAM ADMINISTRATOR'S RESPONSE

Program Administrator Concurs With The Facility Director's Decision: ☐ Yes    ☐ No

Response:

Program Administrator Sigature:                                                                                  Date:

IL462-5001 (R-6-06)                          Distribution:  Master File; Resident

## STATEMENT OF FACTS

The following is a brief synopsis of a chain of chronological events that took place prior to John New's being placed in segregation on Friday, February 9th, 2007.  I, Michael Lewis, have personally witnessed the chain of events that are type written below.

1). Saturday, the 27th day of January, 2007  10:00a
Resident John New was moved from his cell on Delta 3. (herein further known as D3) to his new assigned cell on Alpha Unit/Pod 2-room 1. A short time thereafter, Mr. New showed me a copy of a list containing five (5) names of other civil detainees' like himself who had not been committed whom he had requested that the rooming committee to choose from these individuals if they were going to put anyone in a cell with him. In fast, it was the rooming committee themselves (Joseph Proctor & Tarry Williams) who had asked Mr. New to submit this list of names to them for their consideration.

2). Thursday, the 8th day of February, 2007.  8:00a
Resident John New was notified by staff that he had a Medical Writ that he was scheduled to go on. Mr. New had not been previously notified of any such writ for security reasons. Mr. New was taken on a 6 hour writ to the University of Chicago Hospital. About three (3) hours after he had left for his medical writ, a resident named Greg Morris was moved of his old wing (Delta) and although not requested was forced to cell with Mr. New. Greg Morris was moved into Mr. News room at about 11:00a that same morning after New had left on his writ. Greg Morris was civilly committed, Mr. John New was not. According to Title 59 subsection 299.200, those who are civilly detained are to be kept separated from those who are civilly committed. At about 6:00p Mr. New returned from his medical writ only to find that another resident had been moved into his cell. That resident was none other Greg Morris. Mr. Morris was not only civilly committed, but he smoked as well. Mr. John New on the other hand did not smoke and was not civilly committed. What is even more bizarre both residents had been requested by the same individuals on the rooming committee to submit a list of name(s) that they felt comfortable sharing a cell with. Not only did the rooming committee ignore each of these men's request for compatable cell mates, they seem to have deliberately put each of them in a cell with someone who by law they were not supposed to be celled with that being Mr. New

was still a civil detainee while Mr. Morris was already civilly com-
mitted and a smoker. It appears that each of these men were being
retaliated against because each one had civil litigation pending against
this facility where they are being held. Thinking that there had been
some kind of mistake, Mr. New requested to speak with a "White Shirt"
(Sergeant). Finally, one showed up. Mr. New as well as Mr. Morris voiced
their concerns as to why after being requested by the rooming committee
themselves to submit names of individuals whom each would be compatable
cell mates, why were the requests ignored. The Sergeant didn't have
the answere but said that he was going to check as to why John New
was given a cell mate that was committed already and smoked as well.
The Sergeant asked Mr. New to please be patient and go ahead and stay
the night with Mr. Morris and he would check first thing in the morning
about moving either him or Mr. Morris to another cell.

3). Friday, the 9th day of February.
First thing Friday morning about 8:00a, resident New requested another
"White Shirt" (Sergeant). Mr. New told the staff in the control booth
that the Sergeant was going to see about what he could do about getting
Mr. New or Greg Morris into a different room. However, although requested,
not one Sergeant ever showed up like they said they would. Mr. New then
politely told staff that he was going to walk himself to Segregation.
Mr. New tried everything he knew how to find a resolve to the situation.
Instead he was meet with one lie after another. Finally about 11:05a
two STA's came on the unit to talk New into changing his mind about
walking himself to seg. While standing outside John News room along
with the STA's I was able to witness the conversation and demeanor
of Mr. New. At no time was he disrespectful, beligerent, hateful or
threating to the staff. It was then out of the corner of my eye did
I catch sight of a "White Shirt" standing outside the Alpha's enterance
door up against the wall where he was less noticible. The Sergeant
that was trying to hide was Sergeant Parsons. I told Mr. New "look
out, they're trying to set you up John." They're coming for you.
By that time, it was 11:45a and time for the 11:45a count. Everyone
went to their perspective rooms including myself. Mr. New still re-
quested peacefully to be walked to seg. I left my cell door open so
that I could observe. After the count began, Sergeant Parsons came
out of hiding and came onto the unit. Mr. New held out his hands to
Sergeant Parsons and asked to be taken to seg which they did without
incident.

-2-

4). Friday evening the 9th of February. 6:35p.

As the individual who copies "legal documents" for the residents on Alpha and Baker units, I am also required to go to the segregation unit to see if anyone there as well needed any copies. This particular night (Friday, the 9th) the STA that accompanied me was STA Pennock. As I went to Pod three where Mr. New had been taken I began asking if any of the residents there had need of any legal copies. I came across Mr. New and asked him if he needed any legal copies done. He said that he didn't even have as much as a ink pen nor any writing paper in which to write with. It was then that did I learn from Mr. New that he had been without any drinking water since 12:00 noon that day and here it was now 6:35p. I asked him what the problem was and he told me that he wasn't given a cup or anything to write with. I then asked officer Pennock if it would be alright if I went to John's cell on Alpha 2 and get him his cup to drink out of as a and also give him an ink pen and writting tablet as well as his insulated mug to drink out of. I was told by Mr. Pennock that he would have to check with his boss and see if it was permissible for Mr. New to have a cup to drink with. I was shocked! It was then did I also find out that this man had also been denied soap to wash his hands with as well as other toiletries. Although Mr. New was quite the gentleman through the whole thing, it was apparent that he was now being punished for something he didn't do. According to the Administrative Code Title 59, Section 299 subsection 620, "Restrictions on diet, medical or sanitary facilities, clothing, bedding, or legal mail, or access to legal counsel and reductions in the frequency of use of toilets, washbowls and showers shall be prohibited from consideration under the Resident Behavior Management System." Plain and simple, **Corporal punishment is forebidden!**

5). After spending about a week in segregatin for something he didn't do, Mr. New was returned to the Alpha 2 unit to share his cell still with Mr. Morris present. Both men have been extremely patient in the light of all the lies and manipulative tactics done by this facility. I was shocked when Mr. New showed me his "Behavioral Committee" decision upon returning to our unit. It accused Mr. New of creating a dangerous disturbance on the unit. He did no such thing! Nothing could be further from the truth. If that wasn't enough, Mr. Proctor and Ms. Dobier said that their Attorney (James Vlahakis) told them that they were not required to follow the Administrative Code.

-3-

This is incorrect. Rules adopted by an administrative agency pursuant to statutory authority have the force of Law and the administrative agency is bound by the rules. Hetzer v. State Police Merit Board (1977), 49 Ill.App.3d 1045, 1047, 8 Ill.Dec.23, 25, 365 N.E.2d 261, 263;.... However, an agency has no power to misapply or extend an unambiguous rule through strained interpretation. Inwang, 117 Ill.App.3d 608, 612, 73 Ill.Dec. 71, 74, 453 N.E.2d 896, 900. Where the language of a statute is unambiguous and conveys a clear and definite meaning, a court has no right to look for or impose another meaning. Roth v. The Department of Public Aid (1982), 109 Ill.App.3d 457, 460, 65 Ill.Dec.55, 58, 440 N.E.2d 910, 913..

End of Report

# A F F I D A V I T

I, Michael Lewis, under penalties as provided by law pursuant to sec. 1-109 of the Code of Civil Procedure, I certify that the statements set forth in the foregoing statement of facts and this affidavit are true and correct except as to matters therein stated to be on information and belief, and as to such matters I certify that I believe the same to be true.

_Michael Lewis_
Michael Lewis, Affiant

-4-

State Of Illinois)
County Of Schuyler)

### S W O R N   A F F I D A V I T

I, Gregory Scott Morris, of my own free will and under no form of duress or coercion am attesting to the following facts:

On February 08, 2007, I was forcefully instructed by DHS security personnel, specifically STA II Parsons, that I was to move into a cell, specifically A2-1. At approximately 10:30 a.m. of that day, I moved into the cell. The fellow resident who resided in that cell, and still resides in that cell, is one Mr. John New. Mr. New has not yet been adjudicated a sexually violent person in any Illinois court of law. I was adjudicated a sexually violent person on, or about, May 28, 1998, in a court of law within the jurisdiction of Cass County, Illinois. Title 59, Part 299 of the Sexually Violent Persons Administrative Code, states that those individuals being detained and awaiting SVP commitment or an adjudication declaring them not to be sexually violent persons are to be housed separately from those detained who have been adjudicated as sexually violent persons. Additionally, I smoke, have smoked for over 22 years. Mr. John New does not smoke. Furthermore, when I learned that I was being transferred to the cell in which Mr. New resides, I informed both the security staff and the clinical staff that I and another resident (Mr. Joshua Clemons, who has also been adjudicated as a sexually violent person) had agreed to become cellmates when it was necessary to double residents up due to overcrowding (although this, too, is in violation of Title 59, Part 299).

Furthermore, after security staff and clinical staff failed to resolve the crisis of forcing Mr. New and me to become cellmates, having formerly requested that Mr. New give them 12 hours to come to a resolution (to which Mr. New agreed), Mr. New then, at approximately 11:45 a.m. on February 09, 2007, politely refused to be forced any longer to reside in cell A2-1 with my person, and he then respectfully requested security staff, specifically STA II Parsons, to handcuff him and place him in special management, also known as segregation. Mr. New in no manner or form created a dangerous disturbance.

For now, affiant has nothing more to declare.

Subscribed and sworn under oath and under penalty for perjury pursuant to 725 ILCS 5/32 and §1-109 of the Illinois Civil Code of Procedure, on this, the 7th day of March, 2007. I, Gregory Scott Morris, the affiant do hereby certify that all statements set forth above are true and correct, both in substance and in fact, to the best of my knowledge and beliefs.

Gregory Scott Morris, affiant
R.R. #1, P.O. Box 6-A
Rushville, IL 62681

**Joint Committee on Administrative Rules**

# ADMINISTRATIVE CODE

TITLE 59: MENTAL HEALTH
CHAPTER I: DEPARTMENT OF HUMAN SERVICES
PART 299 SEXUALLY VIOLENT PERSONS
SECTION 299.200 DETENTION FACILITY

## Section 299.200  Detention Facility

The Department may utilize a secure residential facility as a detention facility. To the extent possible considering operational, programmatic and security needs, <u>detained persons shall be kept separate from committed persons.</u> The Department also approves all Illinois Department of Corrections correctional facilities for the detainment of individuals until they complete any term of imprisonment imposed for a criminal conviction or adjudication of delinquency.  While in the Department of Corrections, the Department of Corrections remains responsible for their care and custody.

The Department also approves the use of a county jail for a detention facility where there is a written agreement between the Department and the county sheriff authorizing such usage.  Any written agreement shall outline responsibilities assigned to both parties.  The Department shall determine which detention facilities it will use based upon geographic area, space availability, willingness of the local officials to participate, and adequacy of the facility to meet the needs of the detained individual.

(Source:  Amended at 24 Ill. Reg. 6567, effective April 5, 2000)



**DEPARTMENT OF
HUMAN SERVICES**

**TREATMENT AND
DETENTION FACILITY**

## NOTICE OF APPEARANCE BEFORE THE BEHAVIOR COMMITTEE

Resident:  New, John             DHS# 863120

Date and Time of Incident: 04-26-17  approximately 4:00pm

Nature of Incident/Potential Rule Violation:  **Resident New refused housing and went to Special Management: Pod1 Room 12**

This notice is to inform you that the Behavior Committee will be meeting to review the incident mentioned above.  This meeting is scheduled to occur on 4-27-07 or later, between the hours of **10:00 AM** and **3:00 PM**.

You will be contacted by security staff during this time frame.  You will be asked if you wish to appear before the Behavior Committee.  Attendance at a Behavior Committee meeting is optional.  If you do plan to attend, please be prepared to appear when called to do so.  You may present written documentation (i.e.: your own account of incident,  witness statements, etc.)  and discuss the circumstances surrounding this incident.  Upon determination that a resident has violated a rule, the Behavior Committee shall determine appropriate management status, determine appropriate treatment recommendations, impose behavioral restrictions or any combination thereof.

My signature below indicates that I have received notification of my scheduled appearance before the Behavior Committee.

_____
Resident Signature

_____        Date
Staff Signature

Date Notified: 04-26-07    Time Notified: 12 pm

04-26-07
Date

ILLINOIS DEPARTMENT OF HUMAN SERVICES
TREATMENT & DETENTION FACILITY

## BEHAVIOR COMMITTEE MEETING
## INITIAL

NAME: New, John    DHS#: 863120    DATE OF INITIAL MEETING: 4/27/07

DATE OF ADMISSION: 03/07/05    MANAGEMENT STATUS: Temp Special PRIMARY THERAPIST: Payne (Int B)

Date Of Event: 04-25-07 approximately 11:305am

Description Of Event: On the above date and time, resident New refused to lock up for facility count.

Resident Addressed Behavior Committee: Yes/No   Received 24 hour notification: Yes/No.  Waived notification Yes/No/NA

Resident Comments: I am willing to go back to my room on A Unit

Behavioral History for the past six months: No behavior incidents in the past six months.

Determination Of Rule Violation: Major Rule Violation — Creating a Major Disturbance

Treatment Recommendation (if none, reason): Discuss appropriateness of behavior with Primary Therapist

Committee Decision: Major Rule Violation — Drop one RMS level to Intermediate C. Remove from Temp Secure & return to Unit with same roommate

SIGNATURES: Cooper R    TITLES: Team Leader
            D. Hongas              STAFF
            Jw Proctor Psys        Team Leader

DATE OF REVIEW: N/A

cc: Primary Therapist, Facility Director, Clinical Director, Associate Clinical Director; Security Director, Secure Management Log, Unit Directors, Internal Investigator, Vocational Director, Administrator On Duty and Resident

Revised: 06/30/04

State of Illinois
Department of Human Services

# TDF Resident Grievance



| Name of Resident: John New, Jr. | ID #: 863120 | Date of Incident Occurrence: April 27, 2007 | Unit: A-1 |
|---|---|---|---|

| Date Received 05-08-07 A07:49 IN | Grievance #: 05 07 GR 0338 |
|---|---|

**Nature of Grievance**

☐ Personal Property  ☒ Staff Conduct  ☐ Mail Handling  ☐ Meals  ☐ Medical  ☐ Other:  (Specify): _____

☒ Disciplinary Report:    Report Date:  4/25/07

(Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision.)

Use only this form to give a BRIEF Summary of Grievance:

I, the above named resident submit this grievance to grieve the acts of Unprofessiona Conduct of Behavior Committee Members, Dr. Diane Dobier, Dr. Joseph Proctor and STA II, Sgt. Sally Hougas, in making a incorrigible decision of dropping me down in ( RMS ) status, from Intermediate "B", down to Intermediate "C" status.

However, on the date in question of April 25, 2007, I was placed in Special Manageme and put on Temp Secure Status, because I refused to move over to Alpha 1, because I did not fill out a Resident Rooming Request to move into a cell with Resident Miller, who currently resides in Room 11, over on Alpha 1.

Although, if you were to review my " Notice of Appearance before the Behavior Committee on April 26, 2007, at 12:55pm, you will see that the Behavior Committee had written a fruadulent behavior report, saying that on [ 04-26-17 ] at approximate **4:00P**, when the incident happened on the original date of **April 25, 2007, at approximately**, that the charge that should of been written, that I refused housing, instead of someone stated that **On the above date and time, resident New, refused to lock up for facility count.**

Saying that I created a **Major Disturbance**, in which that statement was a deliberately lie, and it was fabricated by the Behavior Committee, in dropping my ( RMS ) status, in which the **Behavior Committee**, did not investigate the allegation that I was telling them the truth, about they maded a critical mistake in penalizing me even more, than what the original charge was suppose to be.

In conclusion, that I would also like for the Security Staff to honor my Low Bunk Permit, which was issued by Dr. Anyanwu on May 1, 2007, because as of this very date, I was forced to climbing to the Top Bunk,

Relief Requested:  That my ( RMS ) Status be placed back to Intermediate "B", immediately from the original date of February 13, 2007, in which I was reduced from Intermediate "A" Status on February 13, 2007... (2) That the Security Staff honor my Low Bunk Perm that was issued to me by Dr. Anyanwu on May 1, 2007...

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreperable harm to self.

Resident Signature: _____    Date: 5-4-07

JL462-5001 (R-6-06)    Distribution:  Master File; Resident    Page 1

State of Illinois
Department of Human Services

# TDF Resident Grievance



Grievance Examiner's Response:

Grievance Examiner's Signature:                                                    Date:

Date Received: ___5 - 14 - 07___                    FACILITY DIRECTOR'S RESPONSE

Facility Director's Decision: Grievance: ☐ Upheld    ☐ Denied

Behavior Committee Decision Appeal: ☐ Upheld    ☑ Denied

Response:

Facility Director Signature: _____                Date: __5 - 14 - 07__

NOTE: If appealing the Facility Director's Decision, please attach the Grievance Appeal Form and forward to Grievance Examiner

Date Received: _____    PROGRAM ADMINISTRATOR'S RESPONSE

Program Administrator Concurs With The Facility Director's Decision: ☐ Yes    ☐ No

Response:

Program Administrator Sigature:                                                    Date:

462-5001 (R-6-06)                        Distribution: Master File; Resident



State of Illinois
## Department of Human Services
Treatment and Detention Facility

# HEALTH CARE REQUEST

Resident Name ___John New, Jr.___      Date ___4/6/07___

Unit ___Alpha # 2___      Room # ___1___

Describe Health Care Problem ___If possible, I have to see Dr. Joe, because Security is having me wear a " BLACK BOX ", along with other handcuff restraints, which be aggravating the nerves in my ( " NECK, SHOULDER, ARM AND LEGS " ) and Dr. Joe, can verify my current Medical Condition of me having a slip disc in my lower back, and he could sign a " MEDICAL ORDER ", telling Security not to place the Black Box on me, because it is #######  Disconforting  wearing that device for (4) four hours at a time...___

Thank You, Respectfully
Resident New

Resident Signature ___[signature]___

## Do Not Write Below This Line

Date Received _____      Time Received _____

Resolution: ___5/1 seen by MD___

_____

Date Completed _____

HCU Staff Name (Signature and Print)

IL462-5400 (N-7-04)



**State of Illinois**
**Department of Human Services**
**Treatment and Detention Facility**

# HEALTH CARE REQUEST

Resident Name _____ JOHN NEW _____    Date _____ APRIL 27, 2007 _____

Unit _____ ALPHA # 1 _____    Room # _____ 11 _____

Describe Health Care Problem _____ I SERIOUSLY NEED TO SEE DOCTOR JOE, BECAUSE I AM HAVING

SEVERE EXCRUCIATING PAIN IN MY BACK, LEFT ARM AND SHOULDER, WHICH SOMETIMES LEAVES ME

IN A STATE OF PARALYSIS...

_____ THANK YOU, RESPECTFULLY

_____ RESIDENT NEW

_____ ALPHA 1, ROOM # 11

Resident Signature _____

---

**Do Not Write Below This Line**

---

Date Received _____    Time Received _____

Resolution: _5/1 Seen by MD_ _____

_____

_____

                                           Date Completed _____

HCU Staff Name (Signature and Print) _____

IL462-5400 (N-7-04)

NEW, JOHN - 80306899

## Neurosurgery Note

* Final Report *

Result Type:          Neurosurgery Note
Result Date:          March 01, 2007 2:36 PM
Result Status:        Modified
Performed By:         Stone MD, James L on March 01, 2007 2:57 PM
Verified By:          Stone MD, James L on March 01, 2007 2:57 PM

## * Final Report *
## Document Contains Addendum

Neurosurgery Note: First seen 2/8/07  with numbness and tingling of the left arm and the left hand.  43 year old male. MRI done today shows a C34 disk off to the left - with associated surrounding PLL thickness behind the C3 body. the spinal cord is indented by the lesion.
This problem goews back to 2004.
Exam  gait is good, negative romberg tandem gait intact.
Motor-  some weakness of left grip. He is left handed. Brisk DTRs in the legs. Plantars down.
No ankle clonus
Sensory has decreased scratch left arm forearm and hand  and only thumb.


IMP C34 disck herniation and cervical myelopophy
 Rec. C3-4  ACDF and possible C3 vertebrectomy

Procedure and risks discussed, he wishes to wait and think it over.
Soma as a muscle relaxant he tolerates, appears to be a reasonable choice for the symptoms and I recommend it.
RTc
James L. Stone MD

**Addendum by Stone MD, James L on March 01, 2007 2:58 PM**
RTC PRN

James L. Stone MD

**Completed Action List:**
* Sign by Stone MD, James L on March 01, 2007 2:58 PM
* Modify by Stone MD, James L on March 01, 2007 2:58 PM
* Perform by Stone MD, James L on March 01, 2007 2:57 PM
* Sign by Stone MD, James L on March 01, 2007 2:57 PM
* VERIFY by Stone MD, James L on March 01, 2007 2:57 PM

Page 1 of 1
(End of Report)

Printed by:     Stone MD, James L
Printed on:     3/1/2007 2:58 PM