**E-FILED**
Wednesday, 23 January, 2008  05:23:07 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| John New, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 3147-HAB-CHE |
| v. ) | |
| ) | |
| Brian Thomas, et al., ) | |
| ) | |
| Defendants. ) | |

**MOTION TO BAR PLAINTIFF FROM ANY FURTHER EX PARTE
COMMUNICATIONS WITH THE LIBERTY DEFENDANTS**

NOW COME the Liberty Defendants, SHAN JUMPER, DIANE DOBIER, JOSEPH

PROCTOR and LIBERTY HEALTH CARE CORPORATION, and move for the entry of an

order precluding Plaintiff from any further ex parte communications with the Liberty

Defendants regarding aspects of his lawsuit:

**I.     Introduction**

1.      Plaintiff has been detained as a "sexually violent person" pursuant to the

Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq.* (the "SVP

Act") and resides in a Department of Human Services ("DHS") Facility in Rushville,

Illinois.  Complaint, p. 6.

2.      This is Plaintiff's second civil rights complaint related to his confinement.

Defendants moved to dismiss on December 31, 2007.  Among other things, Plaintiff

complains about room assignments and conditions of confinement.

3.      On December 6, 2007, Plaintiff has filed a motion for a temporary

restraining order (TRO) to require DHS staff to allow him to live with a roommate of his

choosing.    *See* Exhibit A (dkt. no. 26).  Plaintiff admits that his repeated roommate

requests were denied because staff believed it was inappropriate to house Plaintiff with

the individual in question given Plaintiff's history of sexual involvement with young

men. A fair paraphrase of Plaintiff argument is that "staff have it all wrong." Plaintiff's argument ignores the "warning signs" evidenced in his various correspondence.

4.      First, Plaintiff's TRO motion demonstrated that his proposed roommate (resident David Stone) refers to him as "my Spiritual father & Advisor" and claims that he has known Plaintiff "as my basketball coach since early age" and while housed at the Pontiac Correctional Center. *See* Exhibit A, pp. 11-13. Second, Plaintiff wrote to Dr. Jumper and Attorney General Lisa Madigan, among others, and alluded to a sexual attraction with his young protégé: "Myself and resident Stone, has formed strong bonds of trust with one another, and a degree of closeness equivalent to close family or committed sexual affines . . . ." *See* Exhibit B, letter dated 10/05/07, p. 2.

5      The Court denied Plaintiff's motion, holding that it "does not have the authority to interfere with who the plaintiff's roommate should be":

> Plaintiff's motion for a temporary restraining order directing defendants to allow him to room with an inmate who shares the same faith is denied (d/e 26). The court does not have the authority to interfere with who the plaintiff's roommate should be. See *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (according "wide-ranging deference" to prison officials).

*See* Minute Order dated December 10, 2007.

## II.      Improper Ex Parte Communication

6.      Despite the denial of his TRO motion, Plaintiff continues to demand that he live with resident Stone. On January 17, 2008, Plaintiff wrote to Clinical Director Shan Jumper, a named defendant, in an attempt to place Dr. Jumper on notice of his demands. *See* Exhibit C-1, p. 2 ("I am sending you . . . photocopies of letters that I sent to Facility Director Phillips, so can't anybody say that I did not bring my issues to your attention to be addressed"). Plaintiff's letter threatens further legal action against Dr. Jumper. *Id.* at p. 3 ("I am quite sure that your Attorney has informed you . . . that I hear this issue on January 25, 2008, by via telephone conference to he Honorabel

6275033v1 864883

Judge Harold A. Baker . . . I sincerely hope that you would address this issue . . . before <u>January 25th</u>, before I see Judge Baker, because I will submit this correspondence as a "<u>Exhibit</u>", showing the court, that I tried to notify you . . . .").

7.    Plaintiff now demands to live with resident Stone on the pretext of allowing them to practice their "Zen Buddhist" religion.  Exhibit C-1, p. 1.[1]  Clearly, Plaintiff is *obsessed* with living with resident Stone and has even demanded to live on the same housing unit.   Exhibit C-2, letter to Facility Director Phillips dated 01/08/08, pp. 1-3; Exhibit C-3, letter to Phillips dated 12/28/08, p. 2.

8.    Plaintiff cannot communicate with Dr. Jumper in this manner as Dr. Jumper is a named defendant and represented by the undersigned counsel.  Plaintiff should be informed that all further communications should be sent to the undersigned counsel.    While Plaintiff may think that it is appropriate to try to influence a defendant referencing his upcoming conference with the Court, his efforts are in vain, the law does not require Dr. Jumper afford him the roommate o his choice.

III.    **Plaintiff's Repeated Demands Lack Merit**

A.    **No Right to a Particular Roommate**

9.    Plaintiff claims that he has been told that his rooming requests have been denied on the basis that staff believe that his requires are "[n]ot appropriate at this time."   Ex. C1, p. 1 and attached Resident Room Change Request Form.  In an effort to get around this ruling, Plaintiff's most recent letter demands that he be placed on the *same housing unit as Plaintiff*.  Ex. C, p. 2.  These demands have no merit.

---

[1]    In making this demand, Plaintiff admits that the DHS Facility Director has allowed him to meet with resident Stone to practice their religion each week for 30 minutes.  *Id.* Given the fact that Plaintiff can now practice his religion with Mr. Stone, he "may not nickel and dime his way into a federal claim by citing small, incremental deprivations." *Thielman v. Leean,* 282 F.3d 478, 483-484 (7th Cir. 2002).

6275033v1 864883

10.     "[I]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lille*, 536 U.S. 24, 39 (2002). *See also, Meachum v. Fano,* 427 U.S. 215, 225 (1976); *Williams v. Faulkner*, 827 F.2d 304, 309 (7th Cir. 1988) (there is "no constitutionally protected liberty interest in remaining in any particular wing of a prison."). On January 9, 2008, the Seventh Circuit issued an opinion in *Sain v. Budz*, 2008 WL 80643 (7th Cir. 2007). (Exhibit D). Among other things, the Seventh Circuit held that treatment staff complied with "professional judgment" when it declined to grant the plaintiff's requests to live in a double room in the newly constructed wing of the Joliet DHS facility which was air conditioned, among other amenities. *Id.* at *8 ("It is certainly within the bounds of reasonable professional judgment to avoid transferring an HIV-positive patient with a history of impermissible sexual behavior with other inmates to a room with another detainee. Mr. Sain offers no evidence to show that this justification was a sham or otherwise impermissible").

11.     Plaintiff's situation is no different. The Rushville TDF is intended to provide a safe atmosphere for sexually violent persons to rehabilitate themselves. Plaintiff has steadfastly refused to consent to treatment – and that is his choice. However, both Plaintiff's demand letters and resident Stone's requests leave little for the imagination –Plaintiff is attempting to become involved in a relationship with Plaintiff. Ex. C-1, p. 2 ("Myself and resident Stone, has formed strong bonds of trust with one another, and a degree of closeness equivalent to close family or committed sexual affines . . . ." *See also*, Ex. B, p. 2 ("because my Victim was a 15 year male, and I know that I it is documented that I have a attraction to teenage males . . . .").

12.     It is clearly within the bounds of professional judgment for staff to limit Plaintiff's access to Mr. Stone considering the fact that Plaintiff admits to being

6275033v1 864883

attracted to young men and he met Mr. Stone when he was a young man and Plaintiff was his basketball coach. *See, e.g., Thielman v. Leean,* 282 F.3d 478, 483-484 (7th Cir. 2002) ("facilities dealing with . . . sexual disorders are 'volatile' environments whose day-to-day operations cannot be managed from on high."). While Mr. Stone is free to refuse to consent to treatment, it is within the bounds of professional judgment for staff to be concerned that Plaintiff will attempt to use his history with Mr. Stone to suggest to Mr. Stone that he should refuse to consent to sex offender treatment just like he has refused to do.

### B.    Plaintiff Cannot Manufacture Article III Standing

13.    Section 1983 "liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir.1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Defendant Jumper Jumper (the Clinical Director of the Treatment Program) has moved for dismissal because Plaintiff has merely listed him in the caption of the Complaint and because *Respondeat superior* is an improper method of establishing liability. *See, e.g., Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998); *Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006); *Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir. 1981).

14.    Plaintiff has attempted to circumvent these standards by writing directly to Dr. Jumper. *See* Exhibit C-1, p. 2, "the only reason I am bringing this issue to your attention is because . . . your attorney . . . stated in a deposition that . . . <u>I did not sen[d] you any notification stating to you that I have a problem</u>, well this time I am sending you . . . photocopies of letters that I sent to Facility Director Phillips, so can't anybody say that I did not bring my issues to your attention to be addressed". (Emphasis in original). Plaintiff's efforts are futile not only because he lacks a constitutional right to a roommate of his choice, but because he cannot manufacture

6275033v1 864883

Article III standing _after_ the commencement of a lawsuit.  _See, e.g., Perry v. Village of Arlington Heights_, 186 F.3d 826, 829-30 (7th Cir. 1999).

15.    Dr. Jumper should be dismissed because Plaintiff's recent letter demonstrates that Plaintiff had failed to communicate to him about his desires to practice his chosen religion with resident Stone at the time he filed suit.

## IV.    Conclusion

16.    Plaintiff's conduct borders on harassment, or worse, it demonstrates an obsessive and dangerous fixation on living with a particular resident, against the expressed opinions of experienced professional staff.  Plaintiff's persistent demands are reason enough to deny his request as his obsession borders on the irrational. Defendants do not need to wait for something improper to occur before they act.  _See e.g._, _Youngberg v. Romeo_, 457 U.S. 307, 324 (1982) ("a presumption of correctness . . . is necessary to enable [mental health] institutions of this type-often, unfortunately, overcrowded and understaffed-to continue to function.").

WHEREFORE, the Liberty Defendants respectfully request that this Honorable Court issue an order barring him from engaging in any further ex parte communications with the Defendants regarding aspects of his lawsuit.

Respectfully submitted,

By: /s/ James C. Vlahakis
Attorney for the Defendants

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000
Jvlahakis@hinshawlaw.com

6275033v1 864883

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2007, I electronically filed the above document, with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.  I further certify that on December 31, 2007, I served mailed a copy of the above document to the following party of record:

> John New
> c/o Department of Human
> Services
> R.R. #1, Box 6A
> Rushville, IL 62681

Respectfully submitted,

By:  /s/ James C. Vlahakis

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street
Suite 300
Chicago, Illinois 60601-1081
(312) 704-3000
Jvlahakis@hinshawlaw.com

6275033v1 864883

**E-FILED**
Wednesday, 23 January, 2008  05:23:42 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| John New, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 3147-HAB-CHE |
| v. | ) | |
| | ) | |
| Brian Thomas, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**APPENDIX OF EXHIBITS IN SUPPORT OF MOTION TO BAR PLAINTIFF FROM
ANY FURTHER EX PARTE COMMUNICATIONS WITH THE LIBERTY DEFENDANTS**

| Exhibit | Description |
|---|---|
| A | Plaintiff's Motion for a Temporary Restraining Order; |
| B | Letter from Plaintiff to Defendant Jumper, et al., dated 10/05/07; |
| C-1 | Letter from Plaintiff to Defendant Jumper dated 01/17/08 and Resident Room Change Request Form; |
| C-2 | Letter from Plaintiff to Facility Director Larry Phillips, dated 01/08/08; |
| C-3 | Letter from Plaintiff to Facility Director Larry Phillips, dated 12/28/07. |

**E-FILED**
Wednesday, 23 January, 2008  05:24:26 PM
Clerk, U.S. District Court, ILCD

Exhibit A

*ORIGINAL*

**FILED**     **E-FILED**

Thursday, 06 December, 2007 04:32:47 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

DEC 0 6 2007

| | |
|---|---|
| JOHN NEW, JR.<br>  Plaintiff/Petitioner | )<br>)<br>) |
| | ) |
| -vs- | )<br>) |
| | ) |
| BRIAN THOMAS, et al.,<br>  Defendant/Respondent(s) | )<br>)<br>) |

ORDER TO
CAUSE FOR A
A TEMPORARY
RESTRAINING
ORDER

Case No.  07-3147

## MOTION TO ORDER TO CAUSE FOR A
## A TEMPORARY RESTRAINING ORDER

Upon the complaint, the supporting affidavits of plaintiff, and the memorandum of law submitted herewith, it is:

ORDERED that defendants, Brian Thomas ( Associate Facility Director ), Shaun Jumper ( Clinical Director ), Eugene McAdory ( Security Director ), show cause in room _____ of the United States Courthouse, 600 East Monroe, Springfield, Illinois 62701, on the ____ day of _____ 200_ , at _____ o'clock, why a preliminary injunction should not issue pursuant to Rule 65(a) of the Federal Rules of Civil Procedure enjoining the defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them, in denying myself and another patient/ resident, of our 1st and 14th Amendment Rights of the United States Constitution of the rights to practice our religious beliefs, and to roomed together as roommates, because of the mandates of our common religion as Zen Buddhists, in the Illinois Department of Human Services, Treatment and Detention Facility in direct violation of Plaintiff's Procedural due process rights of the 1st and 14th Amendment of the " Free Exercise Clause ", of the United States Constitution.

PAGE 1-OF-3

Which on the date of October 5, 2007 and also November 7, 2007, myself and fellow patient/resident ( David Stone ) who is also a Zen Buddhist, submitted (2) Resident Rooming Requests, stipulating in writing and in a Signed Written Affidavit, that we would like to become roommates, because we both share a common bond of religion, in which we are both ( ZEN BUDDHISTS )

Plaintiff also submits that the religious counseling function between him and Mr. Stone, is further basis for us to be assigned together, so that both of us may enjoy spiritual peace.  Because of the mandates of our common religion, this interest implicates the Free Exercise Clause.  It furthermore is conducive to our rehablilitation, and hence to the common public interest.

IT IS FURTHER ORDERED that effective immediately, and pending the hearing and determination of this order to show cause, the defendants: Brian Thomas, Shaun Jumper, Eugene McAdory, and each of their officers, agents, employers, and all persons acting in concert or participation with them, are restrained from denying the Plaintiff and Patient/Resident: David Stone, from becoming roommates with one another and allowing the both of them to practice their religious beliefs as roommates, housed over on Housing Unit, Alpha # 1.

IT IS FURTHER ORDERED that the order to show cause, and all other papers attached to this application, be served on the aforesaid Plaintiff by DATE:_____

_____
Judge's Signature

DATED:_____

New v. Thomas, et al.,        No. 07-3147

CERTIFICATE OF SERVICE

I, Plaintiff John New, Jr., Pro-Se hereby do certify that I have served an exact photocopy of the foregoing Motion to Order To Cause For A Temporary Restraining Order, in support thereof upon:

> To: Mr. James C. Vlahakis
> Hinshaw & Cublberton, LLP
> 222 North LaSalle Street
> Suite 300
> Chicago, Illinois 60601

by causing a copy of same, in a correctly addressed envelope bearing First Class United States Postage, to be deposited in the United States Mail, at the Illinois Department of Human Services, Treatment & Detention Facility, located in Rushville, Illinois 62681, on this day of December 4th, 2007.

SUBSCRIBED AND SWORN TO BEFORE ME

This 04 day of Dec. 2007

Sandra

NOTARY  PUBLIC

OFFICIAL SEAL
SANDRA J. HAYS
COMMISSION NO. 655223
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-11-2010

PAGE 3-OF-3



State of Illinois
Department of Human Services

PAGE 1-OF-2

# TDF Resident Grievance - Appeal Form

| Name of Resident: John New, Jr. | ID #: 863120 | Date of Submitted: November 18, 2007 | Unit: Alpha 1 |
|---|---|---|---|
| Date Received by Administration: | | Grievance #: | |

USE BLACK INK ONLY

**SUMMARY OF GRIEVANCE APPEAL:**

In a direct appeal to a Grievance that I filed on **August 31, 2007**, of Grievance Number **# 09-07 GR-0633**, of the Roomming Committee denying me to have Resident: **DAVID STONE**, as my new roommate.

Because for one, Resident Stone & myself are both **ZEN BUDDHIST**, which is documented in both of our Clinical Residental Files, and the reason that we are both requesting to become roommates with one another, so we can both continue practicing our religion.

Although our religious counseling function between the both of us, is a further basis for us to be assigned together, so that we may both enjoy spiritual peace.

Because of the mandates of our common religion, this interest implicates the **Free Exercise Clause of the 1st U.S. Amendment Constitutional Rights up under " Freedom of Religion "**...

And the Clinical Staff of this facility is in violation of my 1st Amendment U.S. & Illinois Constitutional Civil Rights, up under the Freedom of Religion Act...

Denying me and Resident Stone the right to practice our religious beliefs as Zen Buddhist, in denying us to become roommates with one another, after myself and Resident Stone have submitted 2nd Resident Roomming Requests through our Primary Therapists, asking to be place in a room together over on Housing Unit Alpha # 1.

While the Clinical Staff is being totally discriminatory against me, because of what certain Clinical Evaluators have placed in my Resident Clinical File about me.

However, I am also being retaliated against by the Clinical Staff for me filing a Temporary Restraining Order not to be placed in a room with a person who is Civilly Committed up under this Act.

Resident's Signature: _____

**ALL GRIEVANCE APPEALS MUST BE FILED ON THIS OFFICIAL GRIEVANCE APPEAL FORM**

Grievance must be filed within 30 days after receipt of the Facility Director's response. Please attach the grievance with the Grievance Examiner's report and the Facility Director's decision. Forward to the Grievance Examiner.

7

State of Illinois
Department of Human Services

PAGE 2-OF-2



# TDF Resident Grievance - Appeal Form

| Name of Resident: | John New, Jr. | ID #: 863120 | Date of Submitted: | November 18, 2007 | Unit: Alpha 1 |
|---|---|---|---|---|---|
| Date Received by Administration: | | | Grievance #: | | |

USE BLACK INK ONLY

SUMMARY OF GRIEVANCE APPEAL:

Also on **October 5, 2007**, I have submitted a letter to Secretary Adams of the Illinois Department of Human Services, letting her know how I am being discriminated against by the Rooming Committee of them denying me and Resident Stone of becoming roommates with one another over on Housing Unit; **Alpha # 1.**

And in her correspondence back to me, Secretary Adams's subordinate, Dr. Lorrie Rickman Jones, Director of Mental Health, stated that I should try to resolve this incident through my Primary Therapist, in which I did.

Then I filed a grievance, in which the Grievance Examiner, denied my grievance on **10-16-07**, saying that I asked to be placed in a room with Resident Fields, but when I submitted another Resident Rooming Request to ask for Resident Stone as my roommate, that request had gotten denied, too !

But this time, I did not get a written response from the Facility Director in what was the reason for denying my grievance, and I tend to forward a copy of my grievance to Dr. Freeman, in letting him know how I am being deny of my 1st Amendment U.S. & Illinois Constitutional Civil Rights, of Freedom of Religion, and now that me and Resident Stone are Zen Buddhists, the Clinical Staff of this facility is denying our rights to practice our religious beliefs, as Zen Buddhists, of being placed in a room together, so that both of us may enjoy spiritual peace and practice our religion, in the privacy of our own room.

In conclusion, I will file a Injunction in the Federal Court, Amending to the previous lawsuit that I have pending against this Administration of how my 1st Amendment U.S. Constitutional Rights are being violated, of denying me and another Resident who have submitted (2) Resident Rooming Request to become roommates with one another, because we both practice the same religion, and it is documented that we are both Zen Buddhists.

And Chief McAdory, has a copy of a Court Motion that I have filed on October 23rd, 2007, asking my Judge to issue a Court Order to place me and Resident Stone together in a room over on Alpha # 1, because of our religious beliefs, because Chief McAdory should have already received my correspondence and the Court Motion that I sent to him on November 7, 2007, showing him that I will address this issue in a Court of Law, for further redress of me being denying of my Consitutional Rights.

Resident's Signature:

**ALL GRIEVANCE APPEALS MUST BE FILED ON THIS OFFICIAL GRIEVANCE APPEAL FORM**

Grievance must be filed within 30 days after receipt of the Facility Director's response. Please attach the grievance with the Grievance Examiner's report and the Facility Director's decision. Forward to the Grievance Examiner.

# RESIDENT ROOM CHANGE
# REQUEST FORM

Resident should complete the top section of this form and turn it into their Primary Therapist or Team Leader, who will pass the form onto the Rooming Committee.

Request generated by (circle one): (Resident)    Primary    Team Leader    Security

Resident Name: __John New, Jr.__    Date: __10/5/07__

Unit: __Alpha__ # __1__    Room#: __11__    Current Roommate: __D. MILLER__

Smoking Status: __YES__    HCU Permits (lower bunk, etc.): __LOW BUNK PERMIT__

Length of time with current roommate? __(6) MONTHS__

Reason for requesting a room change (please be specific): __BECAUSE ME AND RESIDENT DAVID STONE, ARE BOTH ZEN BUDDHISTS, AND WE WANT TO BE ABLE TO PRACTICE OUR RELIGIOUS BELIEFS, AND PLUS WE HAVE KNOWN ONE ANOTHER FOR OVER (14) YEARS...__

What has been done to resolve the situation (please be specific): __SEND NUMEROUS RESIDENT ROOMING REQUEST THROUGH OUR PRIMARY THERAPIST TO BECOME ROOMMATES WITH ONE ANOTHER, AND THEY KEEP DENYING US...__

*****************************************************************

Primary Therapist please attach any progress notes that support or document this request, including attempts to work with the resident to resolve his concerns, along with the residents response.

*****************************************************************

**Team Leader please complete this section**    Date received: _____

What is the status of this move (circle one):    Emergency    Urgent    Non-Urgent

History of Sexual Misconduct (include date and resident name): _____

_____
_____
_____

History of Fighting and Aggressive Behavior (include dates and resident name): _____

_____
_____
_____

*****************************************************************

**Rooming Committee complete this section:**    Date request received: _____

Committee Decision: _____

_____

Resident Moved to Room: _____    Roommate: _____

*****************************************************************

**Approval:**

| Clinical | Signature: | Title: | Date: |
|---|---|---|---|
| Security | Signature: | Title: | Date: |

cc:    Associate Clinical Director
       Unit Director
       Team Leader
       Primary Therapist

Created 02/06

**DHS**

**Illinois Department of Human Services**

Rod R. Blagojevich, *Governor*                                    Carol L. Adams, Ph.D., *Secretary*

319 E. Madison  •  Springfield, Illinois 62701-1035

October 26, 2007

Resident John H. New, Jr.
Treatment and Detention Facility
R. R. 1, Box 6A
Rushville, IL 62681

Dear Resident New:

Secretary Adams has asked me to respond to your letter dated October 5, 2007, regarding your complaint that the Treatment and Detention Facility (TDF) has denied your request for a room change.

Your complaint is best resolved at the Treatment and Detention Facility. The grievance procedure for residents detained or committed at the TDF is outlined in 59 Illinois Administrative Code, Section G, 299.800: Resident Grievances (see attached).

In summary, you must first attempt to resolve incidents, problems or complaints through your primary therapist or staff person involved. If your complaint is not resolved, it should be filed on the proper grievance form and sent to the Grievance Examiner. The Grievance Examiner will investigate the grievance and make a recommendation to Facility Director Phillips. Facility Director Phillips will issue a written decision to you. If you would choose to appeal the Facility Director's decision, your appeal may be directed to Dr. Anderson Freeman, Deputy Director and program administrator for the Sexually Violent Persons program.

Resident grievances that do not follow this procedure will not be addressed. The decision of Dr. Freeman is the final determination for all resident complaints at the TDF.

Sincerely,

*Lorrie Rickman Jones*

Lorrie Rickman Jones, Ph.D.
Director of Mental Health

State of Illinois
Department of Human Services

PAGE 1-OF-2



# TDF Resident Grievance

| Name of Resident: DAVID STONE | ID #: 745597 | Date of Incident Occurrence: 10/5/07 and 11/7/07 | Unit: Alpha # 3 |
|---|---|---|---|

| Date Received | | Grievance #: | |
|---|---|---|---|

**Nature of Grievance**

☐ Personal Property  ☑ Staff Conduct  ☐ Mail Handling  ☐ Meals  ☐ Medical  ☑ Other: (Specify):  DENIAL OF MY RELIGIOUS F

☐ Disciplinary Report:  Report Date: _____   PRACTICES

(Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision.)

Use only this form to give a BRIEF Summary of Grievance:

In violation of my First Amendment and Fourteenth Amendment Rights, in violation of my Civil Rights and possibly on Act of Inter-Retaliation, I am filing this legal D.O.C.; (R-6-06) against the Clinical Director, Dr. Shuan Jumper.  I am clearly dissenting that on October 5, 2007, I submitted a Resident Room Change Request Form to my Primary Therapist, ( Dr. Drake ), whom submitted my request to the Department Rooming Committee which the Clinical Supervisor is Dr. Jumper.

Prior to my request, Dr. Jumper's subordinates who oversees the Rooming Committee, denied my request to be roomed with my Spiritual Father and Spiritual Advisor, Resident John New, Jr. over on Alpha # 1, because I am a Student that studies under the teaching of the **ZEN BUDDHIST**, religion, which I currently studied under African-Hebrew Israelite, in which holds the same principal aspect of Zen Buddhist, which is veganism.

I was denied my right to exercise that religion, so I was advised by my Attorney, to have it changed to Zen Buddhist, which is honored here at the Department of Human Services.  I was approved to honor and practice this religion.  Regarding my First Amendment Rights, that I have the right to freely exercise any Religion thereof and the liberty to practice its studies thereto, protected by the Fourteenth Amendment.

Relief Requested:

☐  Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

Resident Signature: _____    Date: 11-17-07

IL462-5001 (R-6-06)    Distribution:  Master File; Resident    Page 1 of 2

State of Illinois
Department of Human Services                    PAGE 2-OF-2

# TDF Resident Grievance

| Name of Resident:<br>DAVID STONE | ID #:<br>745597 | Date of Incident Occurrence:<br>10-5-07 and 11-7-07 | Unit:<br>Alpha # 3 |
|---|---|---|---|
| Date Received | | Grievance #: | |

Nature of Grievance

☐ Personal Property  ☑ Staff Conduct  ☐ Mail Handling  ☐ Meals  ☐ Medical  ☑ Other:  (Specify): **DENIAL OF MY RELIGIOUS PRACTICES**

☐ Disciplinary Report:    Report Date: _____

(Attach copy of Notice of Appearance Before The Behavior Committee and Behavior Committee Decision.)

Use only this form to give a BRIEF Summary of Grievance:

The Right of Equal Protection against Discrimination or Prejudicial of Practicing the Religion. Therefore, I requested to be roomed with Resident New, whom oversees my studies and religious practices.

However, I was biaslly denied with no rational explanation or Factual basis on why my request was denied. I again, re-submitted my request to be roomed with Resident New, on Alpha # 1.

And that request was denied on 10/5/07, that I re-submitted through the Inter-departmental Mail, and on 11-7-07, I re-submitted another request, asking to be placed in a room with Resident New, because I clearly dissent that Resident New, is my Spiritual Father & Advisor, and that I feel safe and secure with him as my roommate, and that I have known Mr. New, personally for over 14 years, and our closeness is of Spiritual closeness and practices. All in which I am being denied my right to study, and practice my religion with Resident New, and I am being biasly denied, due to one's dislikes ( Dr. Jumper ) of my Spiritual Father and Advisor, Resident John New, Jr.

[ See Exhibits of Rooming Requests, in my Resident Clinical Master
  File, dated 10-5-07 and 11-7-07 ].

Relief Requested:   To be roomed with Resident John New, Jr., over on Alpha # 1

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreperable harm to self.

Resident Signature _____    Date: 11-17-07

IL462-5001 (R-6-06)                    Distribution:  Master File; Resident                    Page 1 of 2

# RESIDENT ROOM CHANGE
# REQUEST FORM

Resident should complete the top section of this form and turn it into their Primary Therapist or Team Leader, who will pass the form onto the Rooming Committee.

Request generated by (circle one): (Resident)   Primary   Team Leader   Security

Resident Name: _Stone_          Date: _10-05-2007_

Unit: _Alpha_    Room#: _6_      Current Roommate: _NONE_

Smoking Status: _YES_      HCU Permits (lower bunk, etc.): _NONE_

Length of time with current roommate? _none_

Reason for requesting a room change (please be specific): _I feel comfortable having John H._ _New as my cellmate/Roommate since I've known Mr. John H New as my basket-_ _ball coach since early age, and as my spiritual father while in IDoc (Pontiac Corr._ _Ctr.) I feel better secured with him as a Roommate for there lyes no hidden intentions or_ _Threats to my well being or safety._

What has been done to resolve the situation (please be specific): _I have made the appropriate_ _submissions to my primary therapist, Mrs. Drake through Dittos mail which was_ _denied without Rational explination or without proper consultations in regards to_ _the Rooming Committee Procedures._

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Primary Therapist please attach any progress notes that support or document this request, including attempts to work with the resident to resolve his concerns, along with the residents response.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Team Leader please complete this section**      Date received: _____

What is the status of this move (circle one):   Emergency   Urgent   Non-Urgent

History of Sexual Misconduct (include date and resident name): _____

_____

_____

History of Fighting and Aggressive Behavior (include dates and resident name): _____

_____

_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Rooming Committee complete this section:**     Date request received: _____

Committee Decision: _____

_____

Resident Moved to Room: _____     Roommate: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Approval:**

| Clinical | Signature: | Title: | Date: |
|----------|-----------|--------|-------|
| Security | Signature: | Title: | Date: |

cc:    Associate Clinical Director
       Unit Director
       Team Leader
       Primary Therapist                                    Created 02/06

# RESIDENT ROOM CHANGE
## REQUEST FORM

*Hand Copied.*

Resident should complete the top section of this form and turn it into their Primary Therapist or Team Leader, who will pass the form onto the Rooming Committee.

Request generated by (circle one): (Resident)   Primary   Team Leader   Security

Resident Name: Stone                              Date: 11-07-07

Unit: ALPHA #3   Room#: 06            Current Roommate: NONE

Smoking Status: Smoker          HCU Permits (lower bunk, etc.): NONE

Length of time with current roommate? NONE

Reason for requesting a room change (please be specific): i am requesting to have John H. New Jr. as my roommate since we have known each other for close to 14 yrs. he is my spiritual Advisor and has been my fundamental Basketball coach instructor since i was an adolescent. i feel it is benifical on spiritualness, and nonhazardous to my safety or well being.

What has been done to resolve the situation (please be specific): i have made the appropriate submissons through my Primary Dr. Drake, and to the Rooming committee to be placed in the same Room with Mr. John H. New Sr.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Primary Therapist please attach any progress notes that support or document this request, including attempts to work with the resident to resolve his concerns, along with the residents response.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Team Leader please complete this section**          Date received: _____

What is the status of this move (circle one):   Emergency   Urgent   Non-Urgent

History of Sexual Misconduct (include date and resident name): _____
_____
_____

History of Fighting and Aggressive Behavior (include dates and resident name): _____
_____
_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Rooming Committee complete this section:**          Date request received: _____

Committee Decision: _____
_____

Resident Moved to Room: _____      Roommate: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Approval:**

| Clinical | Signature: | Title: | Date: |
|----------|-----------|--------|-------|
| Security | Signature: | Title: | Date: |

cc:      Associate Clinical Director
          Unit Director
          Team Leader
          Primary Therapist

Created 02/06

Exhibit B

DATE : October 5, 2007

TO : Dr. Shaun Jumper, Ph.D,      Mr. Guy Groot, Clinical Team Leader
Clinical Director             Ill Dept of Human Services
Ill Dept of Human Services    SVP/TDF Rushville Program
SVP/TDF Rushville Program     R.R. 1, Box 6A
R.R. 1, Box 6A             Rushville, Ill 62681
Rushville, Ill 62681

Dr. Carol L. Adams, Ph.D.    Ms. Lisa Madigan
Secretary for the Ill Dept    Attorney General for the State
of Human Services         of Illinois
319 East Madison Street     100 West Randolph Street
Springfield, Ill 62701-1035   Chicago, Ill 60601

FROM. : John H. New, Jr. # 863120
Illinois Dept of Human Services, Treatment & Detention
SVP/TDF Rushville Program
R.R. 1, Box 6A
Rushville, Ill 62681

RE: : ILLINOIS DEPARTMENT OF HUMAN SERVICES, TREATMENT AND DETENTION'S
FACILITY DIRECTIVE WRITTEN POLICY

Dear Ladies & Gentlemen :

That reason that I am sending all of you this aforemention correspondence letter
is because certain Administrative Officials on the Clinical & Security Staff here
at this facility is violating my rights as a Resident/Patient in accordance with
the Ill Dept of Human Services, Treatment & Detention Facility's FACILITY DIRECTIVE
CHAPTER: RESIDENT CARE / DIRECTIVE NUMBER: 05-0002.

This particular Facility Directive speaks of the subject of RESIDENT ROOM CHANGES,
and I want to know why, everytime that I submit a Resident Rooming Change Request
to the ROOMING COMMITTEE, asking to be place in a room with a certain resident,
my request always gets denied, WITHOUT NO EXPLAINATION WHATSOEVER ! ! ! !

Although in accordance with FACILITY DIRECTIVE NUMBER 05-0002, Page (5) paragraph
(2)(a), if a certain resident is asking the Rooming Committee in writing, through
his Primary Therapist, that he wants to be placed in a room with another certain
resident, whom he has known this individual in the Ill Dept of Corrections, as well
as out there in society.

1

Also it states in Paragraph (2) through (4), on Page 7, that the Rooming Committee is suppose to write a decision along with a rational supporting the decision on the "Resident's Request", form.

And after the decision has been document on the "Resident Request", form, it is then returned to the resident.

But that has not been the case, in my issue with the Rooming Committee of this facility.

Because myself and Resident: DAVID STONE, who asked his Primary Therapist and in writting to the Rooming Committee, that he would like to have me as his roommate, since he looks up to me as his Spiritual Father & Mentor, because when the both of us were incarcerated at the Pontiac Correctional Center, back in 2004-05, myself and Resident Stone were placed right next door to one another.

And Resident Stone, adopted me as his Spiritual Father & Mentor, because I kept him out of a lot of mischief, while we were at Pontiac Corr. Ctr..

However, when his Primary Therapist told him that the Rooming Committee verbally denied his request to be placed in a room with me as his roommate, he was very desvastated, and the Rooming Committee or his Primary Therapist gave Resident Stone no explaination whatsoever for their reason of denying the both of us to becoming roommates with one another.

And when I tried addressing this same issue with my Primary Therapist, he said that he E-Mail, Mr. Groot, who is the Chairperson of the Rooming Committee, about my issue of why the Rooming Committee denied me and Resident Stone's requests to become roommates with one another.

While I have seen one first-hand accounts & observations, co-residents assignments are manipulated in a manner to racially segregate residents, and are therefore suspect and entitled to no deference.

Although such an election is within the bounds of administrative policy, according to which I have observe that the Facility solicts requests from residents for co-resident housing living assignments.

Nonetheless, co-habitation in a confined setting based on common experiences shared restriction of liberties is by nature conducive to very close relationships.

Myself and Resident Stone, has formed strong bonds of trust with one another, and a degree of closeness equivalent to close family or committed sexual affines, and although the Act requires the Department of Human Services to treat even an individual who has been committed to a secrue facility "in the least restrictive manner consistent with the requirements of the person. 725 ILCS 207/40(b)(2).

Nonetheless, I have filed several grievance on the issue of why is the Rooming Committee is discriminating against me, and to this very date, I have not heard or received anything from the Grievance Examiner of why is the Rooming Committee is discriminating against me, for not placing me in a room with a person who submitted his Request Rooming Request to the Rooming Committee to have me as his roommate.

2

And I've followed the grievance procedure for this facility, which is really "FUTILE", because when I follow the grievance procedure which is outlined in Title 59 of the Illinois Administrative Code, Section G, 299.800; Resident Grievance, my grievances never gets addressed or answered.

That's why I have filed a 2nd Civil Action Complaint against DHS Officials here in the U.S. District Court of the Central District of Illinois, about the issues of certain individual(s) getting special preferential treatment, such as job assignments, housing rooming living assignments, etc.

And this issue is being addressed in Federal Court, as we speak.

Because the Attorneys who is representing ( Liberty Health Care, Inc ) who is subcontracted by the State of Illinois, to provide State-Of-The-Art Sex Offender Treatment services, to those individuals who participate in treatment or not.

And the Leading Attorney who is representing Dr. Jumper, who works for Liberty Health Care is:

Mr. James C. Vlahakis
of the law firm of
Hinshaw & Culbertson LLP
222 North LaSalle Street
Suite 300
Chicago, Ill 60601-1081
(312) 704-3000


And the Leading Attorney who is representing the State Employees of this facility is:

Ms. Shirley R. Calloway
Assistant Attorney General
Office of the Attorney General's Office
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
(312) 814-5581


However, if my issues are not addressed within 10 working days of this aforemention correspondence, I will forward copies of this letter to Mr. Vlahakis & Ms. Calloway, notifying them in writting that I will submit a MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT, along with my response for Motion for Summary Judgement, against their clients for not providing me with specific and related treatment services, by me being a Civil Detained resident of this Treatment & Detention Facility.

Because I have documented proof to submit in my Amended Complaint to my Federal Judge of DHS Facility Officials Personal Direct Involvement, of being held lible under 42 U.S.C. 1983, supervisors, "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference."

3

Since their clients will not address any of my issues, in accordance to
Dr. Jumper's Declaration, that he gave to his attorney ( Mr. Vlahakis ),
along with a copy of Liberty's contract, and explaining his and my Primary
Therapist job descriptions.

In which, since my Primary Therapist has been assigned to me, he has not
contacted me on a Weekly Basis, as his contract says that he is suppose
to do, so I am being denied these so-called specific & related treatment
services, that is suppose to be afforded to me, by me being a Civil Detained
Person, awaiting trial in my Civil Committment proceedings.

In closing, I am including Resident Rooming Requests by me and Resident
Stone, asking & requesting to become roommates with one another, and a
Written Sworn Affidavit, acknowledging that if we both violate any rules
of the facility, we will accept the consequences that DHS Facility Officials
deems fit, but we are expressing to all parties involve in this process
that we would like to be treated equal, as the residents/patients that
the Administration here claims us to be.

Thank You
Respectfully Submitted,

Resident John New, Jr. # 863120
of the Ill Dept of Human Services
Treatment & Detention Facility
R.R. 1, Box 6A
Rushville, Illinois 62681

4

STATE OF ILLINOIS )
                 )
                 )     SS.
COUNTY OF SCHUYLER )

## S W O R N   A F F I D A V I T

I, John New, Jr. and I, David Stone, of our own free will and under no form of duress or coercion am attesting to the following statement:

We have both submitted Resident Rooming Requests to the Facility Rooming Committee, requesting that the both of us, would like to become roommates with one another, and the both of us are presently being detained pursuant to 725 ILCS 207/30(a) of the Illinois Sexually Violent Persons Commitment Act.

Due to the both of us, upon initially encountering each other in detention, discovered that the both of us are old acquaintances with many common experiences and are very good friends with one another.

And the both of us was previously confined for at least 22 years together while we were incarcerated in the Ill Dept of Corrections, at the Pontiac Corectional Center from 2004-05, and we have further developed a close personal relationship during this time.

We will also accept the consequences of our actions, and we both assert that our relationship is not of a sexual nature, and we both anticipate that a suspicison of such may be evoked, and will accept the consequences of our actions, if our relationship were a sexual one.

For now, affiant has nothing more to declare.

Subscribed and sworn under oath and under Penalty of Perjury, pursuant to 725 ILCS 5/32 and 1-109 of the Illinois Civil Code of Procedure, on this, the 5th day of October, 2007. I, John New, Jr., and I, David Stone, the affiants do hereby certify that all statements set forth above are true and correct, both in substances and in fact, to the best of our knowledge and belief.

_____
John New, Jr., Affiant
R.R. 1, Box 6A
Rushville, Ill 62681

_____
David Stone, Affiant
R.R. 1, Box 6A
Rushville, Ill 62681

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct to the best of his knowledge and belief, except as to matters therin stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

JOHN NEW, JR.

## VERIFICATION BY CERTIFICATION

Under penalities as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the  undersigned certifies that the statements set forth in this instrument are true and correct to the best of his knowledge and belief, except as to matters therin stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

DAVID STONE

# RESIDENT ROOM CHANGE
## REQUEST FORM

Resident should complete the top section of this form and turn it into their Primary Therapist or Team Leader, who will pass the form onto the Rooming Committee.

Request generated by (circle one):   Resident    Primary    Team Leader    Security
Resident Name:  JOHN NEW, JR.                Date:    OCTOBER 5, 2007
Unit:  ALPHA 1    Room#:    11            Current Roommate:  D. MILLER
Smoking Status:  SMOKER            HCU Permits (lower bunk, etc.): LOW BUNK PERMIT
Length of time with current roommate?    (5) MONTHS
Reason for requesting a room change (please be specific): RESIDENT DAVID STONE, OF WHOM
I HAVE KNOWN FOR MANY YEARS, WHILE WE WERE IN I.D.O.C., AND I AM HIS SPIRITUAL
FATHER & MENTOR, ASK ME TO BECOME ROOMMATES WITH HIM...

What has been done to resolve the situation (please be specific): I HAVE BROUGHT THIS ISSUE
TO THE ATTENTION OF MY PRIMARY THERAPIST, AND SO HAS RESIDENT STONE, OF US
BOTH REQUESTING TO BECOME ROOMMATES WITH ONE ANOTHER....

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Primary Therapist please attach any progress notes that support or document this request, including attempts to work with the resident to resolve his concerns, along with the residents response.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Team Leader please complete this section**        Date received: _____
What is the status of this move (circle one):    Emergency    Urgent    Non-Urgent
History of Sexual Misconduct (include date and resident name): _____

_____

History of Fighting and Aggressive Behavior (include dates and resident name): _____

_____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**Rooming Committee complete this section:**        Date request received: _____

Committee Decision: _____

_____

Resident Moved to Room: _____    Roommate: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**Approval:**

| Clinical | Signature: | Title: | Date: |
|----------|-----------|--------|-------|
| Security | Signature: | Title: | Date: |

cc:    Associate Clinical Director
       Unit Director
       Team Leader
       Primary Therapist

Created 02/06

# RESIDENT ROOM CHANGE
# REQUEST FORM

Resident should complete the top section of this form and turn it into their Primary Therapist or Team Leader; who will pass the form onto the Rooming Committee.

Request generated by (circle one): (Resident)  Primary   Team Leader   Security
Resident Name: Stone _____   Date: 10-05-2007
Unit: Alpha   Room#: 6 _____   Current Roommate: NONE _____
Smoking Status: YES _____   HCU Permits (lower bunk, etc.): none
Length of time with current roommate? none
Reason for requesting a room change (please be specific): I feel comfortable having John H. New as my cellmate/roommate since I've known mr John H new as my basketball coach since early age and as my spiritual father while in IDOC(pontiac corr. ctr.) I feel better secured with him as a roommate for there lyrs no hidden intentions or threats to my well bounce or safety.
What has been done to resolve the situation (please be specific): I have made the appropriate submissions to my primary therapist, Mrs. Drake through Dutch's mail which was cleared without rational explanation or without proper consultations in regards to the Rooming Committee Proceedures.
*********************************************************************

Primary Therapist please attach any progress notes that support or document this request, including attempts to work with the resident to resolve his concerns, along with the residents response.
*********************************************************************

**Team Leader please complete this section**       Date received: _____
What is the status of this move (circle one):  Emergency   Urgent   Non-Urgent
History of Sexual Misconduct (include date and resident name): _____

History of Fighting and Aggressive Behavior (include dates and resident name): _____

*********************************************************************
**Rooming Committee complete this section:**      Date request received: _____

Committee Decision: _____

Resident Moved to Room: _____   Roommate: _____

*********************************************************************
**Approval:**

| Clinical | Signature: | Title: | Date: |
|---|---|---|---|
| Security | Signature: | Title: | Date: |

cc:   Associate Clinical Director
       Unit Director
       Team Leader
       Primary Therapist                                    Created 02/06

Exhibit C-1

DATE     :    January 17, 2008

TO       :    Dr. Shaun Jumper, Ph.D.
              Clinical Director

FROM     :    Resident John New, Jr.
              Housing Unit : Alpha # 1, Room # 11

RE       :    ABOUT MY CLINICAL TREATMENT TEAM LEADER, IS AGAINST ME
              WHEN IT COMES TO ME HAVING A CERTAIN INDIVIDUAL(S) FOR A
              ROOMMATE


Dear Dr. Jumper :

Sir, the reason that I am addressing this correspondence to you is because
I have been trying to speak to my Team Leader ( Mr. Groot ) for the past
couple of days now, concerning why wasn't my rooming request has been acknowledge
of moving into a empty room over on Alpha # 1, but when other numerous other
residents on the pod, submit rooming requests to Mr. Groot and through their
Primary Therapists, they always get their rooming requests granted.

Now I have already sent (2) correspondences to Facility Director: Mr. Larry
Phillips, in which Director Phillips did acknowledge my request as far as
my religious beliefs are concerned, with another resident who is currently
in Special Mangement ( Resident David Stone ), in which Director Phillips
instructed Captain Scott, for me and Resident Stone to use Dinning Room # 2,
on Saturday Nights to practice our religious beliefs, since we do not have
any Buddhist Priests nowhere in this area, and me and Resident Stone are
practicing " Zen Buddhists ".

Although, when I asked Director Phillips in my 2nd correspondence to him,
if he would intervene and ask the Rooming Committee have me and Resident
Stone, become roommates over on Alpha # 1, 2 or 3, for religious purposes
because by us being seperated from one another, we cannot practice our religious
and spiritual beliefs, which is mandated in our religion as Zen Buddhists.

Director Phillips told Captain Scott to inform me, that he could not get
involved, and that I would have to take this issue up with the Rooming Committee,
but I have went over this issue many of times with my Primary Therapist ( Mr. Olt )
but Mr. Olt has been trying to work with me, and he went to bat for me numerous
times to Mr. Groot, in trying to find a resolution to my problem, but again
Dr. Jumper, I have trying submitting rooming requests to the rooming committee
to have me and Resident Stone become roommates with one another, but everytime
we both submit rooming requests to the Rooming Committee through our Primarys
the Rooming Committee denies us, saying: Not appropriate at this time.

Page 2

However Dr. Jumper, I never asked to be placed in a room with my current roommate, but before I was placed over on Alpha # 1, from moving from Alpha # 2, by Captain Tarry Williams of the Rooming Committee, because when I was on Alpha # 2, I submitted numerous rooming requests to have Resident Arnold Roberts, Jr. as a roommate, because at the time, didn't neither one had a roommate, because we have both submitted rooming requests through our Primary Therapists to becoming roommates with one another over on Alpha # 1, but everytime, our requests always gets denied for no reasons whatsoever saying again: We are not appropriate for one another, but it is very strange to me, that when it comes to other residents, especially those who have a history of sexually acting out with other residents, these individual(s) always manage to get their rooming requests granted of having the individual(s) who they want for a roommate, and I would like to know, how is that possible ?

Because Captain Haage, Mr. Olt, Dr. J. Oberhausen, Captain Scott, and all of the Residents over here on Alpha # 1, can vouch for my character, I try to help anyone that I can on this Pod, but I also have been trying to move out of that particular room with my roommate for over the past (8½) months because I have tried to make it work, but me and my roommate have different life styles, and plus by me being a Zen Buddhists, and my roommate is not a religious person, period, that becomes a problem for me.

And I have brought this issue to the attention of a couple of Residents who are currently living on Alpha # 2, who put in for me as a roommate to live with them, well their rooming requests were denied as well, and that's where I am having a problem with...

Dr. Jumper, not at anytime since I have been in the TDF program, have I ever approached, solict or engaged in any sexual activity with any resident in this program, and I know that the Clinical Staff has looked at my Victim Profile, because my Victim was a 15 year male, and I know that it is documented that I have a attraction for young men, but Dr. Jumper, my Victim profile states that I am attracted to teenage males, not males who are young and look older than I am, in which these individual(s) who requested for me as a roommate, just recently, they do look older than I.

So I personally feel that is a " Contradiction, on whomever is making this bias opinion of me, denying me the opportunity to choose who I would like to have as a roommate, because I am doing everything that is asked of me by my Primary Therapist, various Staff Employees, etc...

And I have even brought this issue to my " Orientation Group Facilitator Ms. Roth, today ( 1-16-08 ), because she said that she would take the liberty to speak to Mr. Groot, on my behalf, to see if we can come up with a solution to my current problem.

Dr. Jumper, the only reason that I am bringing this issue to your attention is because, you are Mr. Groot's boss, and his Supervisor, and since your Attorney ( Mr. James C. Vlahakis ) of Hinshaw & Culbertson LLP, stated in a deposition that you had depose to the Federal Court, that I did not sent you any notification stating to you that I have a problem, well this time, I am sending you a photocopy, along with photocopies of letters that I sent to Facility Director Phillips, so can't anybody say that I did not bring my issues to your attention to be addressed.

Page 3

Because you being Mr. Groot's Supervisor, and he is your subordinate, that I honestly do not know what part does he or you play on the Rooming Committee, but Dr. Jumper, please I am not trying to be belligerent, nor isolent toward any of your gentlemen in my correspondence to you.

And I sincerely apologize if my statements are too harsh, but I am pleading to you Dr. Jumper, in asking you to intervene on my behalf, because since you are the " Clinical Director ", and it seems to me, that the Rooming Committee has a problem " Clinical-Wise ", of my choice for a new roommate more so than they would from a " Security " standpoint.

And since this is a " Clinical " issue, more so than a Security one, that's why I'm writing to you direct, in hoping that you could speak with Mr. Groot, and we all can try to work to a positive resolution of me moving to a empty room over on the Pod, because I have been submitted paperwork to my Primary Therapist ( Mr. Olt ) over a week in advance to move over to Alpha # 1, Room # 7, which at the time, was currently vacant because Resident Hardin who currently occupied that room, was taken back to I.D.O.C. custody, and that following morning, I gave Mr. Olt, my rooming request to move into that particular room over on the Pod, and Mr. Olt told me that he was giving my rooming request for that room, immediately...

Because the Rooming Committee hasn't even met, yet... And I submitted my request in ample amount of time, but when I came back from Court on 1-9-08 I found out that the Rooming Committee had move Resident ( Ruby ) into the room that I have requested to move into a week in advance, but again, I was wrongfully denied by the Rooming Committee, in my quest to be moved into a empty room over on the Pod, and now since Resident Roberts has asked me, would I submit another rooming request to become his roommate, I told him, that I am in the process of writing to you, in seeing how you feel about the issue of me and Resident Roberts becoming roommates with one another, over here on Alpha # 1, that's if the Rooming Committee does not acknowledge me and Resident Stone's religious beliefs as Zen Buddhists, that we have requested numerous times to the Rooming Committee through our Primary Therapists, in the both of us being able to practice our religious beliefs as roommates over here on Alpha # 1, because our religion mandates us to as Zen Buddhists, and by us being seperated from one another, we cannot do so...

That is the issue that I have before a Federal Judge in the Central District, which I am quite sure that your Attorney has informed you about, that I hear this issue on January 25, 2008, by via telephone conference to the Honorable Judge Harold A. Baker of the U.S. District Court of the Central District of Illinois, of how my Constitutional Rights are being violated by this Administration, of me not being able to live and practice my religious beliefs, with a fellow Zen Buddhist ( Resident David Stone )...

Dr. Jumper, Sir, I sincerely hope that you would address this issue at your leisure with Mr. Groot and other members of the Rooming Committee, so we all can work together to come to a peaceful resolution of my current situation before January 25th, before I see Judge Baker, because I will submit this correspondence as a " EXHIBIT ", showing the Court, that I tried to notify you, by you being Mr. Groot's boss, in rectifying this problem, before I address this to the Judge on the 25th of January.

Page 4

In conclusion, Dr. Jumper, I sincerely would like to thank you very much for taking the time out of your busy schedule to read this correspondence that I have sent to you, in reguards to my current issue with my Team Leader and to the Rooming Committee.

And I will sincerely wait most patiently on your response to my correspondence in reguards of what type of action are you going to take to ########### resolve my situation that I have brought to your attention.

Thank You
Respectfully Submitted,

Resident John New, Jr.
Housing Unit, Alpha # 1, Room # 11

cc: Christian F. Binnig ( My Attorney )
    Zachary Ziliak ( My Attorney )
    Clarence L. Burch ( My Attorney )
    Larry J. Phillips ( Facility Director )
    Erin O'Keefe ( Asst Attorney General )
    Mary Ellen Murphy ( Cook County Asst States' Atty )


## VERIFICATION BY CERTIFICATION


Under penalites as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set in this instrument are true and correct to the best of my knowledge and belief except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that he verify believes the same to be true.


DATED: JAN 17, 2008

JOHN NEW, JR.

# RESIDENT ROOM CHANGE
# REQUEST FORM

Resident should complete the top section of this form and turn it into their Primary Therapist or Team Leader, who will pass the form onto the Rooming Committee.

Request generated by (circle one):   (Resident)   Primary    Team Leader    Security
Resident Name:___John New, Jr.___        Date:___December 18, 2007___
Unit:_Alpha_ #_1_  Room#:___#_11___        Current Roommate:___D._MILLER___
Smoking Status:___SMOKER___        HCU Permits (lower bunk, etc.):_HCU_LOW_BUNK_PERMIT_
Length of time with current roommate?___7½_MONTHS___
Reason for requesting a room change (please be specific):_Myself_and_Resident_David_Stone_
_are_both_Zen_Buddhists,_and_we_both_want_to_practice_our_religious_beliefs_as_
_roommates_with_one_another...__That's_why_we_are_both_requesting_to_become_
roomates with one another...
What has been done to resolve the situation (please be specific):_We_have_submitted_several_
_rooming_requests_to_become_roommates_with_one_another_for_religious_purposes_
through our Primary Therapists...

*******************************************************************

Primary Therapist please attach any progress notes that support or document this request, including attempts to work with the resident to resolve his concerns, along with the residents response.
*******************************************************************

**Team Leader please complete this section**        Date received:__12/18/07__
What is the status of this move (circle one):   Emergency    Urgent   (Non-Urgent)
History of Sexual Misconduct (include date and resident name):___Ø___

History of Fighting and Aggressive Behavior (include dates and resident name):___Ø___

*******************************************************************

**Rooming Committee complete this section:**        Date request received:__12/27/07__

Committee Decision:_Not_appropriate_to_move_at_this_
_time._

Resident Moved to Room:_____        Roommate:_____

*******************************************************************

**Approval:**

| Clinical | Signature: | Title: TL | Date: 12/27/07 |
|----------|------------|-----------|----------------|
| Security | Signature: | Title: STM IV | Date: 12/27/07 |

cc:    Associate Clinical Director
        Unit Director
        Team Leader
        Primary Therapist                                    Created 02/06

Exhibit C-2

DATE     :    January 8, 2008


TO       :    Mr. Larry J. Phillips
              Facility Director


FROM     :    Resident John New, Jr. # 863120
              Housing Unit: Alpha # 1, Room # 11


RE       :    <u>ABOUT AN INCIDENT THAT HAPPENED IN CAPTAIN TARRY WILLIAMS'S</u>
              <u>OFFICE BETWEEN ME AND HIM</u>



Dear Director Phillips :

Sir, first of all, I would sincerely like to thank you for addressing my
correspondence, but there was a verbal altercation between myself and Captain
Williams, this morning, as he summoned me to his office, to explain to me,
in what you said...

Although like I've tried to explain to Capt Williams, that their isn't no
Buddhist priest, 300 miles of this facility, and when I tried to ask him
about another issue, as far as my rooming situation, that's when Capt Williams
got totally belligerent with me, saying that " <u>**Director Phillips don't care**</u>
<u>**about your rooming situation, you got to deal with me**</u> "...

Although I have Capt Williams in a Federal Civil Action Lawsuit as we speak,
and yesterday as my Federal Attorneys came down here to visit me, they instructed
me not to have any contact with Capt Williams, whatsoever...

However, when me and Capt Williams got into a verbal disagreement, I told
him that my Federal lawyers told me that I don't even suppose to be talking
to him, and that's when Capt Williams said: " <u>**He doesn't care what my lawyers**</u>
<u>**said to me, because he's got lawyers, too**</u> " ! ! !

And that's when the shouting started between me and him, because Director
Phillips, Capt Williams has been having a " <u>**Personal Vendetta**</u> ", against
me, ever since we were up in Joliet...

Nonetheless, as I was trying to explain to him, before I was rudely cuff
off by him, I was trying to explain to him, that since the Rooming Committee
would not put me and Resident Stone in a room together over on Alpha 1,
due to our religious practices & beliefs, that would it be possible if I
could move over to Alpha 1, Room # 7, because it is currently vacant, and
I could practice with my meditation and continue my spritual refuge, because
my current roommate is not a religious person, and I am not going to impose
my religious practices while I am in the room with him...

Page 2

But on the other hand, I am being denied my religious practices, because
I have submitted countless attempts to be moved over into another room on
Alpha # 1, and everytime that I have submitted a rooming request to the
rooming committee, my request always gets denied...

But when other residents submit resident rooming requests through their
respected Primary Therapist, they always get their requests approved, but
when it comes to me, I'm always getting denied, and when I ask Capt Williams
what was the reason for this, he stated that: **" New, I had nothing to do
with you Resident Morris getting put in your room, while you were over on
Alpha # 2**, but I told him, that he sanction it, because he was on the Rooming
Committee, and he knew about it...

Although this was a Mutual Agreement, **between me and Capt Williams, when**
I was curently residing on Delta 3, Capt Williams and Dr. Proctor came to
me, and ask me to give them (5) names of residents that I could live with,
and that's when Capt Williams moved me over to Alpha # 2, and that's when
I was placed in a room by myself without a roommate...

However Capt Williams, lied about his agreement with me, but that's before
you took over as Facility Director for this facility...

Director Phillips, I have brought this issue to the attention of my Primary
Therapist ( Mr. Olt ) and my Team Leader ( Mr. Groot ) as well as Capt Haage,
and a number of the residents of Alpha # 1, can vouch for just how many
times that I've submitted rooming requests to the rooming committee, informing
them that a room has came open, which I followed Institutional proceedures,
through my Primary Therapist, requesting to be moved into a vacant room
over on Alpha # 1...

Because in the 8 months that I've been assigned to this unit, I have submitted
(4) Rooming Request to move into empty rooms that were available over on
Alpha # 1, and everytime I have submitted one to the Rooming Committee,
every time I got denied...

And now, Director Phillips, I've tried everything possible to come to a
peaceful and professional resolution with this individual, but I sincerely
need a person to mediate between me and Capt Williams, because again, that
we cannot come to a mutual understanding with one another...

And the only person I feel that can resolve this issue is you, Director
Phillips...

Since I've been dealing with this issue with Capt Williams, my blood pressure
has been constantly " **Very High** ", just check my Medical Records over in
the Health Care Unit, it will show you that I have been very stressed-out,
and Capt Williams is the reason why !

Director Phillips, all I am trying to do is move over to another room, which
is **Alpha # 1, Room # 7**, because it is currently vacant, and from there,
I can have spiritual peace and I can continue with my refuge, of practicing
reiigious beliefs in the privacy of my own room, and since they moved Resident
Stone all the way over to the other side of the facility, we both filed
a grievance, stating in accordance of Title 59, 299.330(b) that we cannot
be deprived of our religious beliefs nor practices...

Page 3

In which I don't have a problem with that, because like I told Capt Williams
that it is in the Court's hands now, so we'll see what a Federal Judge has
to say about me and my fellow Zen Buddhists being seperated from one another
by the hands of <u>Captain Tarry Williams</u>...

In conclusion Director Phillips, Sir I am not trying to compromise the operation
of the facility or how you designate your subordinates in carrying out your
polices and proceedures of this institution...

But all I am asking that my issue be addressed of me being able to practice
my religious beliefs in another room over on Alpha # 1, and that's why I
submitted to my Primary Therapist, that I would like to move over to <u>Alpha
1, Room # 7</u>, because that room is currently vacant at the moment, and I
and I asked for it, as soon as it became open, just ask <u>STA II Sgt. R.B. Taylor</u>
for verification, because he was the one who told me to submit a Rooming Request
to my Primary, as soon as the room came open...

Director Phillips, please I am asking you if you could please intervene
on my behalf to move me into room <u>Alpha # 1, Room # 7</u>, so I can attain spiritual
peace and I can get back to my meditation, which is required of my religion...

Because I do not want to get into another confrontation with Capt Williams,
asserting his authority in a very abusive manner, and plus my Federal Attorneys
instructed me not to speak to Capt Williams, at any cost, because of the
Civil litigation that is pending against him, that I have him directly involved
in my suit...

Also, I am including documentation showning you that I am a legimate
" <u>Zen Buddhist</u> ", because I became one while I was still a inmate at the
Pontiac Correctional Center back in December 2004, and I have been practicing
Zen Buddhist, ever since...

Again, Director Phillips I would sincerely appreciate any help or assistance
you could provide me in finding a resolution to my issue, of me being able
to move from Alpha # 1-11 over to <u>Alpha 1-7</u>, in which I've already submitted
a Rooming request through my Primary, to be moved into that room...

Because I do not want to speak to Capt Williams ever again, until my Civil
Litigation in the Federal Courts is over with, because of the issue that he
is included in my current lawsuit against him...

From there, I will wait most patiently on your response to this correspondence
reguarding this issue...


Thank You
Respectfully Submitted,

Resident John New, Jr. # 863120
Alpha # 1, Room # 11

Exhibit C-3

# John Henry New, Jr.
# Jazz Saxophonist

DATE        :   December 28, 2007

TO          :   Mr. Larry J. Phillips
                Facility Director

FROM        :   Resident John New, Jr. # 863120
                Housing Unit: Alpha # 1, Room # 11.

RE          :   ABOUT BEING DENIED TO BE ROOMED WITH ANOTHER RESIDENT,
                DUE TO OUR RELIGIOUS BELIEFS.

Dear Director Phillips :

Sir, the reason that I am addressing this aforemention correspondence
to you is because, the Facility's Rooming Committee, along with my Clinical
Team Leader, is denying me from becoming roommates with another resident,
due to our religious beliefs, as being " Zen Buddhists."...

Although I have filed countless institutional grievances against the
Rooming Committee, for their bias opinion of me, due to what is probably
written in my Residental Clinical Records Master File, stating that I
have a certain preference, when it comes to who I prefer to live with,
as far as a roommate is concern...

Director Phillips, if you were to review my disciplinary record of my 3
years of being in the (TDF) program, not at one time, have I ever been
written a disciplinary ticket, for any type of inappropriate behavior,
nor sexual misconduct...

Nonetheless, I'm being totally discriminated against, because of the
nature of my offense, and I personally feel that the Rooming Committee
is being totally bias against me...

While I have documentation of various other residents in this program,
who have sexually acted-out with other residents, as roommates, engaging
in misconduct activities on various vocational task assignments, etc...

Page 2

But when I ask to have a certain individual for a roommate, the Rooming Committee gives notification to the other resident, who is asking to become my roommate, telling them that I am not a appropriate candidate, saying I might try to sexually act-out with that individual...

Which I felt that is a totally unprofounded and discord assesment of my character, of being a resident who hasn't cause any disciplinary problems for the Employee Staff of this facility...

And now, since they don't provide me or Resident: David Stone, who is also a practicing " Zen Buddhist ", and there isn't no Buddhist Priest that comes into this facility, and hold Buddhist services for me and Resident Stone...

I have file a institutional grievance, stating how other religious denominations of this facility, are allowed to have other clergy personnel come from the outside, and that these residents who attend these services, are all " Caucasians " residents...

But when it comes to the " African-American residents ", who practice other religious beliefs, such as the Musilims, Buddhists, Zen Buddhists, etc...

We are being totally discriminated against by various officials of this facility, and since me and Resident Stone, both are documented in our Residental Clinical Records File, that we are both Zen Buddhists, and have went through the proper proceedures of filing out the necessary rooming requests to the Rooming Committee, stating the reason that we would like to become roommates, is so we can practice our religious beliefs, and have spiritual peace as well, as roommates when we both go into spiritual meditation in the comfort of our own room...

Because that is required of Zen Buddhists, and this Rooming Committee is denying me and Resident Stone of our constitutional rights, as Pre-Trial Civil Detainees, and this alone, violates the " Free Exercise Clause ", of the " Freedom of Religion Act ", in accordance to the United States & Illinois Constitutions...

Director Phillips, I'm not trying to start any type of controversy towards the practices and policies of this institution, but then again, all that I am asking from you, by you being the Chief Administrative Officer for this institution, is to be treated equal and fair, as a human being...

Because I have brought this issue to the attention of your Security Director ( Mr. McAdory ) in a correspondence that I sent to him on November 7, 2007, by via Institutional Mail, which I never received a written response from him, in asking him to address my issues...

Which I have a photocopy of the letter that I sent to Chief McAdory, and I have also brought this issue to the attention of my Primary Therapist, ( Mr. Olt ) and to my Clinical Team Leader ( Mr. Guy Groot ), in addressing my concerns...

01/21/2008  09:56  2173222122  RUSHVILLE TDF  PAGE  08/14

Page 3

But to this very date, I have not heard anything from my Clinical Team Leader ( Mr. Groot ), although my Primary Therapist ( Mr. Olt ), has stated to me, that he has notified Mr. Groot, and told him, that I would personally like to speak with him and Mr. Olt, in addressing my concerns, of why is I'm being discriminated by the Rooming Committee and the Clinical Treatment Team, of denying my choice of roommate, because of a bogus statement, that was written in my Residental Clinical Chart...

While again, I have filed a 2nd " Temporary Restraining Order ", in the U.S. District Court of the Central Division of Illinois, of this facility denying me, my Civil Rights, stating that I do not have the right to meet with a clergy person of my particular faith, and since this facility does not have a Buddhist Priest come in to teach Buddhists services...

I made a proposal to the Rooming Committee, that me and Resident Stone had signed a Sworn Written Affidavit, stating that if we were to violate any institutional rule, that we will accept the consequences of punishment that is imposed by the Institutional's Behavior Committee...

However, I guess that wasn't good enough for them, because the Rooming Committee still denied me and Resident Stone's request to become roommates over on Housing Unit: Alpha # 1, since they have seperate the both of us since now Resident Stone, currently lives on Delta # 3, and I'm still living on Alpha # 1, and we are not able to congregate with one another on a, " Religious & Spiritual Basis ", and the Rooming Committee is aware of that, too ! ! !

In conclusion, my current roommate is not a religious person, and I am not going to impose my religious beliefs upon him, but I am not going to continue abandon my religious beliefs, when it comes to my meditation practices, in accordance with my religious faith and beliefs...

That's why I am asking you Director Phillips, if the Rooming Committee cannot accommodate me and Resident Stone's request to become roommates over on Alpha # 1, due to our religious beliefs, as practicing Zen Buddhists, I respectfully ask you, to be placed on Housing Unit " Fox 1 or Fox 4 ", in a " Single-Man-Room ", so I can attain spiritual peace, among myself, because I cannot continue living in a room with a person who does not share a common bond of religion, such as I do...

And I also stuipulated in a current Formal Emergency Grievance that I've just submitted to the Grievance Examiner on December 27, 2007, stating to her that, I stated that the religious counseling function between myself and Resident Stone, is a further basis for us to be assigned together, so that the both of us, may enjoy spiritual peace, and because of the mandates of our common religion, this interest implicates the " Free Exercise Clause ", it furthermore is conducive to our rehablitation, and hence to the common public interest...

And like I've told my Primary Therapist, that I do not want to litigate this issue in a Federal Court of Law, but if I have too, I will...

Page 4

And show to my Federal Judge in the U.S. District Court of Central Division of Illinois, in a hearing by via Teleconference, before the Honorable: Judge Harold Baker on January 25, 2008, and I will submit a photocopy of of this aforemention correspondence letter, that I am addressing to you, as a Exhibit to the Federal Court.

So, that Judge Baker would see that I have brought this issue to your attention, since your subordinates did not want to address any of my issues, nor any of my concers, as far as what I am trying to explain to you in this correspondence...

In closing, Director Phillips, Sir I am not trying to be disrespectful towards you in any type of way or manner, all I am trying to do is, for me to explain what is going on between me and your subordinates, because half of them, I've already got them in Civil litigation in (2) Federal Courts, one in the Northern District, and the other one is in the Central District, for certain Administrative Officials of DHS, violated my Constitutional Civil Rights...

Simply because, there is " No Line of Communication ", between the Staff Employees, The Clinical Treatment Team, The Security Staff & Residents...

And all that I am asking is that for my issues and concerns be addressed, and the all parties involved come to a peaceful and legitmate resolution that would benifit everyone...

Director Phillips, I sincerely would like to thank you very much, for taking the time out of your busy schedule to read this correspondence that I have brought to your attention, and I would sincerely appreciate any help or assistance, in helping me find a resolution to this issue...

From there, I will wait most patiently on your response to this correspondence that I have sent to you...

Thank You
Respectfully Submitted

Resident John New, Jr. # 863120
Housing Unit: Alpha # 1, Room # 11

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set in this instrument are true and correct to the best of my knowledge and belief except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

JOHN NEW, JR.

Exhibit D

Westlaw.

--- F.3d ----                                                                                    Page 1
--- F.3d ----, 2008 WL 80643 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----)**

Sain v. Wood
C.A.7 (Ill.),2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,Seventh Circuit.
**Timothy SAIN**, Plaintiff-Appellee,
v.
Raymond WOOD, Defendant-Appellant.
**No. 06-3919.**

Argued Sept. 27, 2007.
Decided Jan. 9, 2008.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division. No. 05
C 6394-Suzanne B. Conlon, Judge.

Barry S. Alberts, Schiff Hardin, Chicago, IL, for
Plaintiff-Appellee.
Nancy G. Lischer, Hinshaw & Culbertson, Chicago,
IL, for Defendant-Appellant.

Before BAUER, RIPPLE and KANNE, Circuit
Judges.

RIPPLE, Circuit Judge.
   **\*1Timothy Sain** has been civilly committed to
the custody of the Illinois Department of Human
Services ("IDHS") since 2000. Dr. Raymond Wood,
the defendant, is one of several individuals whom
Mr. Sain sued under 42 U.S.C. § 1983, claiming that
his conditions of confinement violate the Fourteenth
Amendment. Dr. Wood moved for summary
judgment on the ground of qualified immunity. The
district court denied his summary judgment motion,
and Dr. Wood appeals the denial of qualified
immunity. For the reasons set forth in this opinion,
we reverse the judgment of the district court and
remand the case for proceedings consistent with this
opinion.

# I

## BACKGROUND

### A.

   **Timothy Sain**, a repeat sex offender, was civilly
committed to the custody of the IDHS under the

Sexually Violent Persons Commitment Act, 725
ILCS 207/1. From 2000 to 2006, Mr. Sain was held
at the Department's Joliet Treatment and Detention
Facility. Mr. Sain is HIV positive, and he has a
history of sexual interactions with other inmates.

   Dr. Raymond Wood was employed by Liberty
Healthcare Corporation, a private organization, as the
clinical director of the Joliet facility. He was the
physician in charge of the treatment program for
residents found to be sexually violent under Illinois
law. As the clinical director, he did not have
responsibility for the physical building or room
assignments, although he did serve occasionally on
the rooming committee. Issues regarding the room
conditions generally were handled by the IDHS
Facilities Director, Tim Budz.

   The Joliet facility is comprised of two units: a
new unit, built in 2001, and an old unit, built in the
late 1800s. Mr. Sain was housed in the old unit. The
cells in the old unit are small and contain two bunks,
a sink, a toilet and a small window. The paint was
chipping off the walls of Mr. Sain's room, and the
outdated plumbing in the unit emitted a foul
odor.[FN1] The cells in the old unit also are not air
conditioned. Residents cannot control the
temperature of their cells in the heat of summer, and
Mr. Sain's cell often became very hot. Residents were
told to open their windows for ventilation, but some
windows, including Mr. Sain's, did not have screens.
Opening the window allowed bees, wasps and spiders
to come into his cell.

> FN1. In both the old and new units, water
> was supplied by a Joliet facility well. The
> water smelled foul and was brown in color.
> Mr. Sain's complaint alleged health
> violations involving the water; Dr. Wood
> was not included in that count, however, and
> Mr. Sain maintains that he is not suing Dr.
> Wood based upon his problems with the
> drinking water.

   Even during the winter, Mr. Sain's cell was
infested with roaches. He claims that he saw roaches
crawling around his cell, coming from under his bed
and out of cracks in the wall and sink. He also states
that he was bitten several times and was treated for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

bites by the facility physician.[FN2] An exterminator visited the Joliet facility on a regular basis, however, and he frequently sprayed Mr. Sain's room.

> FN2. His physician testified that he in fact had treated Mr. Sain, but he could not recall finding any evidence of a bite.

Mr. Sain alleges that he repeatedly requested to be moved to the air conditioned new unit. Each time his request was considered, however, it was denied by the facility's rooming committee. A variety of reasons were given for the denials, including Mr. Sain's HIV-positive status, his history of sexual interactions with other residents and his failure to participate in sex-offender treatment. Dr. Wood, as clinical director, was a member of the rooming committee and attended placement meetings on occasion; it is unknown, however, whether he was present at the meetings in which Mr. Sain's requests were discussed.

*2 Mr. Sain claims that he wrote a letter to Dr. Wood regarding the conditions in his cell, including the roaches, flies, bees, wasps, spiders, water odor and falling paint chips. Additionally, Mr. Sain alleges that he had a face-to-face discussion with Dr. Wood about his desire to move, although he admitted that he did not tell Dr. Wood that the reason he wanted to move to the new unit was related to the conditions of his room. He also did not mention bugs or water quality in this conversation. Mr. Sain also sent a number of official requests to speak with Dr. Wood, but they were each denied, and his complaints presumably were forwarded to his primary caseworker according to facility policy.

No letter to Dr. Wood from Mr. Sain ever was produced, and Dr. Wood denies ever seeing any such letter. He also does not recall discussing Mr. Sain's requests at any of the few rooming committee meetings that he attended. Dr. Wood claims that he does not remember any conversations with or letters from Mr. Sain, and that he was not aware of the problems with Mr. Sain's living conditions. Such complaints generally were handled by a patient's primary caseworker.

**B.**

Mr. Sain sued Dr. Wood and a number of other Joliet officials for violations of his Fourteenth Amendment due process rights. Dr. Wood moved for summary judgment, contending that Mr. Sain had not produced any evidence showing that Dr. Wood had known of Mr. Sain's conditions of confinement or that Dr. Wood had been deliberately indifferent to his plight. Additionally, Dr. Wood contended that he was entitled to qualified immunity.

The district court concluded that the evidence presented, viewed in the light most favorable to Mr. Sain, could support a reasonable inference that: (1) Dr. Wood knew of Mr. Sain's conditions of confinement, (2) Dr. Wood could have addressed his complaints by moving him to the new facility, and (3) his decision not to do so exhibited deliberate indifference. Therefore, a genuine issue of material fact existed for trial.

The district court also denied Dr. Wood's invocation of qualified immunity. It stated:

> The Supreme Court articulated a well-established constitutional right to humane conditions of confinement.... Woods [sic] was clinical director of the Joliet facility. He supervised the associate clinical director and indirectly supervised the clinical staff. As the individual with the highest level of clinical responsibility, a reasonable person in Woods' [sic] position would have known Sain's purported living conditions were a constitutional deprivation. Wood is not entitled to qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

*Sain v. Budz,* 2006 WL 2796467 at *7 (N.D.Ill.2006) (internal citations omitted). Accordingly, the court denied Dr. Wood's request for summary judgment. Dr. Wood now appeals the district court's refusal to grant him qualified immunity.

**II**

**DISCUSSION**

**A.**

*3 Generally, this court lacks jurisdiction under 28 U.S.C. § 1291 to review a district court's denial of summary judgment. An exception to the final judgment rule exists, however, for defendants requesting summary judgment based on qualified immunity. *Via v. LaGrand,* 469 F.3d 618, 622 (7th Cir.2006). Under the "collateral order doctrine," a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 80643 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----)**

denial of qualified immunity "is an immediately appealable 'final decision' ... to the extent that it turns on legal rather than factual questions."*Id.*

Inviting our attention to *Johnson v. Jones,* 515 U.S. 304 (1995), Mr. Sain contends that we lack jurisdiction over Dr. Wood's qualified immunity appeal because it involves a mixed question of fact and law rather than an "abstract question of law." *See id.* at 317. *Johnson* held that a party "may not appeal a district court's summary judgment order insofar as that order determines whether or not the pre-trial record sets forth a genuine issue of fact for trial."515 U.S. at 319-20. Dr. Wood allocates a significant number of pages in his brief to parsing the facts regarding his knowledge of the allegedly inhumane conditions; this approach, Mr. Sain contends, illustrates that Dr. Wood is asking us to resolve genuine issues of material fact contrary to the Supreme Court's holding in *Johnson.*

Mr. Sain's reading of *Johnson* has been rejected on numerous occasions, by both the Supreme Court and this court. *See, e.g., Behrens v. Pelletier,* 516 U.S. 299, 312-13 (1996); *McKinney v. Duplain,* 463 F.3d 679, 686-91 (7th Cir.2006); *Via,* 469 F.3d at 623. It is well settled that *Johnson* did not prohibit appellate review of a district court's application of law to facts-it merely prohibited an appellate court from parsing the record to determine whether the proffered evidence was sufficient to prove a material fact.*Behrens,* 516 U.S. at 312-13 ("Denial of summary judgment often includes a determination that there are controverted issues of material fact ..., and *Johnson* surely does not mean that *every* such denial of summary judgment is nonappealable.").*Johnson* addresses only those cases in which the issue on appeal is "nothing more than whether the evidence could support a finding that particular conduct occurred."*Id. Johnson* does not preclude appellate review of a district court's *legal* application, even if the court's decision necessarily involves mixed questions of fact and law. *See, e.g., Sallenger v. Oakes,* 473 F .3d 731, 738-39 (7th Cir.2007) (engaging in a "totality of the circumstances" inquiry into the reasonableness of a seizure); *Knox v. Smith,* 342 F.3d 651, 657 (7th Cir.2003) (accepting jurisdiction because "probable cause [and by analogy, reasonable suspicion] is normally a mixed question of law and fact, but where, as here, one side concedes the other's facts as to what happened, it is a question of law").

For the purpose of this appeal, Dr. Wood can assume Mr. Sain's version of the facts-specifically, that Dr. Wood had actual knowledge of Mr. Sain's living conditions and the ability to address them-but he may still maintain that his subsequent refusal to order relocation in those circumstances did not amount to legally actionable deliberate indifference. *McKinney,* 463 F.3d at 688 ("[T]he real question was whether, taking the facts as assumed by the district court, [defendant's] actions violated the Constitution."). Whether Dr. Wood knew of Mr. Sain's living conditions is a disputed question of fact, but for the purpose of this inquiry, we shall accept the plaintiff's assertions of actual knowledge. Whether Dr. Wood's actions based on that knowledge amounted to deliberate indifference is a mixed question of fact and law properly resolved by this court. Therefore, we have jurisdiction over this appeal.

**B.**

**\*4** For the first time on appeal, Mr. Sain contends that Dr. Wood is not a state actor, and therefore he is not entitled to invoke qualified immunity. He relies on *Richardson v. McKnight,* 521 U.S. 399, 412 (1997), which held that privately employed prison guards could not receive qualified immunity because they were not public officials for the purposes of the qualified immunity doctrine. Similarly, Mr. Sain submits, because Dr. Wood is employed by Liberty Healthcare, a private firm managing the Joliet detention facility, he is not entitled to invoke qualified immunity.

*Richardson* involved private prison guards employed by a large firm specializing in providing security for correctional facilities. The guards, although they were not directly employed by the government, contended that they should enjoy qualified immunity because they performed the same functions as state prison guards, who did receive immunity. The Court rejected this "functional approach." *Id.* at 408-09.Instead, it looked at the two purposes underlying government employee immunity to determine whether immunity should be extended to private employees performing public or quasi-public functions. These factors were: (1) a "firmly rooted" tradition of immunity, and (2) the "special policy concerns involved in suing governmental officials,"521 U.S. at 404, namely "protecting the public from unwarranted timidity on the part of public officials" and ensuring that "talented

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---                                                                                    Page 4
--- F.3d ----, 2008 WL 80643 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----)**

candidates were not deterred by the threat of damages suits from entering public service,"*id.* at 408.

The Court in *Richardson* concluded that no firmly rooted tradition of immunity existed for a private prison guard, an occupation that had been in existence in a private capacity (and without immunity) throughout most of our Nation's history. *Id.* at 407.Additionally, it found that the special policy considerations justifying government employee immunity were not present in that case: The threat of competition from other organized private corrections firms would prevent unwarranted timidity from the guards, and readily available insurance and private compensation packages ensured that talented employees would not be deterred by this type of service. *Id.* at 409-13.

The Court specifically noted, however, that its determination in *Richardson* was limited to the facts of that case, in which "a private firm, systematically organized to assume a major lengthy administrative task ... with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms."*Id.* at 413.It further clarified: "The case does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision."*Id.*

Prior to 1997, we twice granted qualified immunity to privately employed prison psychologists because they were performing a government function.*Williams v. O'Leary,* 55 F.3d 320, 324 (7th Cir.1995); *Sherman v. Four County Counseling Ctr.,* 987 F.2d 397, 405-06 (7th Cir.1993). However, we have no comparable post-*Richardson* cases, and *Richardson* specifically rejected the "public function" analysis. 521 U.S. at 408-09. The law in this circuit is therefore far from conclusive on this question.

**\*5** Other circuits have encountered cases involving similar circumstances, however, and have determined that certain private medical personnel working in public facilities are not entitled to qualified immunity under *Richardson.*In *Jensen v. Lane County,* 222 F.3d 570, 576-79 (9th Cir.2000), the Ninth Circuit held that a contract psychiatrist in a county facility was not entitled to immunity because: (1) there was no firmly rooted tradition of immunity for psychiatrists, (2) private market forces operate to ensure psychiatrists adequately perform their duties,

or fear replacement, (3) the psychiatrist's role in that case was a complex administrative task rather than a discrete public service task, and (4) the threat of distraction by lawsuits was insufficient because private psychiatrists often deal with such lawsuits.*Id.* at 577-79.In *Hinson v. Edmond,* 192 F.3d 1342 (11th Cir.1999), the Eleventh Circuit, following the same *Richardson* analysis, held that the privately contracted medical director of a county jail was not entitled to qualified immunity. *Id.* at 1346-47.The court emphasized that the physician had a good degree of autonomy in his medical treatment and policies, external market forces would ensure adequate treatment, and private salaries and insurance would prevent deterrence of qualified candidates. There are two First Circuit cases reaching an opposite conclusion; however, both failed to cite *Richardson,* and their analysis of the issue was cursory. *See Burke v. Town of Walpole,* 405 F.3d 66, 88 (1st Cir.2005); *Camilo-Robles v. Hoyos,* 151 F.3d 1, 10 (1st Cir.1998).

It is extremely difficult to apply the *Richardson* standard to the facts of this case. This difficulty stems not only from the lack of Seventh Circuit guidance on the issue, but also from the lack of relevant factual development in the record. The history of sex offender detention programs in Illinois, the extent of Liberty's control over the facility, the details of its interaction with the state, and the robustness of market competition in Liberty's field are not readily ascertainable, either from the district court's opinion or from the record. Dr. Wood attempts to address these issues in his reply brief, claiming that he had limited autonomy under the relevant statute, that he served as an adjunct to IDHS, and that no competitive market exists for his specific type of "sexually violent persons" specialty. The sparse record, however, neither supports nor negates these assertions.

This dearth of information in the record stems directly from Mr. Sain's failure to contest Dr. Wood's assertion of qualified immunity before the district court. In fact, despite numerous opportunities to do so, there was never a mention of Dr. Wood's status as a private contractor until Mr. Sain's brief on appeal. The parties and the district court apparently assumed that Dr. Wood was an appropriate party to assert qualified immunity; the briefs to the district court, as well as the district court's decision, discussed only whether Dr. Wood had disqualified himself from immunity by violating a clearly established

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                    Page 5
--- F.3d ----, 2008 WL 80643 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----)**

constitutional right. Because the issue of Dr. Wood's status as a private employee was never raised at the district level, the record is silent on the facts necessary to determine whether he nevertheless may invoke qualified immunity under *Richardson.*

**\*6** Mr. Sain's failure to raise at the district court level the issue of Dr. Wood's ineligibility for qualified immunity because of his private employment resulted in a forfeiture of the argument, which we review only for plain error. *See, e.g., United States v. Thigpen,* 456 F.3d 766, 769 (7th Cir.2006). Given the absence of any record addressing *Richardson's* multi-factored test, the district court did not commit plain error in assuming (albeit implicitly) that Dr. Wood was entitled to assert qualified immunity. We therefore decline to address the merits of this argument and assume, for the purpose of this case only, that Dr. Wood is entitled to assert qualified immunity. *See Perez v. Oakland County,* 466 F.3d 416 (6th Cir.2006) (adopting a similar approach).

C.

Governmental and quasi-governmental actors performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."*Sallenger v. Oakes,* 473 F.3d 731, 739 (7th Cir.2007) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). In *Saucier v. Katz,* 533 U.S. 194, 200 (2001), the Supreme Court articulated a two-part test for determining whether an actor is entitled to qualified immunity: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"(2) "If a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."*Id.* at 201.We review de novo a district court's denial of summary judgment on qualified immunity grounds. *Sallenger,* 473 F.3d at 739.

As a civilly committed detainee, Mr. Sain is protected by the Due Process Clause of the Fourteenth Amendment. *Collignon v. Milwaukee County,* 163 F.3d 982, 987 (7th Cir.1998). His protection against cruel and inhumane treatment has been defined as at least as extensive as that afforded to prisoners by the Eighth Amendment. *Id.; see also*

*Brown v. Budz,* 398 F.3d 904, 909 (7th Cir.2005) (applying Eighth Amendment analysis to a section 1983 claim brought by a Joliet facility resident awaiting a civil commitment trial). The Eighth (and Fourteenth) Amendment requires that Mr. Sain be housed under "humane conditions" and provided with "adequate food, clothing, shelter, and medical care."*Farmer v. Brennan,* 511 U.S. 825, 832 (1994). To show a constitutional violation and defeat Dr. Wood's invocation of qualified immunity, Mr. Sain must prove *both* (1) that he suffered a sufficiently serious deprivation and (2) that Dr. Wood acted with "deliberate indifference" to his conditions of confinement. *Id.* at 837.

Mr. Sain contends that his conditions of confinement amounted to a sufficiently serious deprivation. Specifically, he submits that the peeling paint, foul odor and lack of air-conditioning in his cell, his inability to open his window without letting in bugs, and a cockroach infestation in the unit amounted to inhumane treatment in violation of the Fourteenth Amendment.

**\*7** Mr. Sain relies upon *Board v. Farnham,* 394 F.3d 469 (7th Cir.2005), for his assertion that poor ventilation may amount to a constitutional deprivation. However, this case involved toxic mold in air ducts and evidence of severe nosebleeds and respiratory problems, conditions far more serious than those alleged by Mr. Sain. Similarly, his suggestion that the lack of air-conditioning is a serious deprivation relies on a case involving substantially different circumstances-there, a failure to provide working heat for an extended period of time in extremely cold temperatures. *See Henderson v. DeRobertis,* 940 F.2d 1055 (7th Cir.1991). The peeling paint or an unpleasant odor in a cell described in this record, along with the absence of any evidence of serious injury, does not amount to constitutional deprivation.

Mr. Sain also contends that the cockroaches in his cell were so unsanitary that they established inhumane living conditions. We have held that a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation. *Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir.1996). In *Antonelli,* however, we emphasized that "the allegation of sixteen months of infestation and significant physical harm" distinguished his case from the typical pest-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ---
--- F.3d ----, 2008 WL 80643 (C.A.7 (Ill.))
**(Cite as: --- F.3d ----)**

infestation complaint. *Id.* Here, Mr. Sain alleges that, during his approximately six-year confinement in the old unit, he often saw "several" cockroaches crawling in his cell. R.113 at 5. He also alleges that he was bitten by a cockroach twice during his time in detention. *Id.* He concedes, however, that an exterminator regularly visited his cell-every month or month and a half-and also would come in response to Mr. Sain's complaints. *Id.*

The conditions of Mr. Sain's detention were certainly unpleasant. The state deserves no praise for permitting them to persist. However, we cannot say that, whether considered individually or collectively, they constitute a constitutional violation. To be considered a constitutional violation, Mr. Sain's deprivations must be "objectively serious." We conclude that a reasonable jury could not conclude that Mr. Sain's conditions of confinement were objectively serious enough to establish a constitutional violation.

Even if Mr. Sain were able to show that his conditions of confinement were sufficiently serious to establish a constitutional deprivation, he must also show that Dr. Wood's failure to transfer him into the new unit was a result of "deliberate indifference." The test for deliberate indifference is a subjective one: The official must "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Farmer, 511 U.S. at 837.*

In the context of medical professionals, this standard also has been described as the "professional judgment" standard: A medical professional is entitled to deference in treatment decisions unless "no minimally competent professional would have so responded under those circumstances."*Collignon v. Milwaukee County, 163 F.3d 982, 988 (7th Cir.1998).* A medical professional acting in his professional capacity may be held to have displayed deliberate indifference only if "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment."*Collignon, 163 F.3d at 988* (quoting *Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982)); see also Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir.2006).*

**\*8** The district court concluded that Mr. Sain's evidence that Dr. Wood had knowledge of Mr. Sain's

conditions of confinement, and that he had the ability to correct the deprivations, was sufficient to survive summary judgment. Even assuming that Dr. Wood knew of the conditions of confinement and had the authority to remedy them, the record does not support the conclusion that he acted with deliberate indifference.

Mr. Sain focuses on Dr. Wood's failure to transfer him to the new unit, which was more sanitary and comfortable than the old unit. The record reflects, however, that Dr. Wood, in his professional judgment, decided that transferring Mr. Sain to the new unit would contravene his treatment objectives. Therefore, he chose to address Mr. Sain's pest-infestation complaints by regularly exterminating his cell.

The record is undisputed that the rooms in the old unit were regularly (in the plaintiff's words, "frequently") exterminated. R.113 at 5. Although we have held that an occasional extermination (twice in sixteen months) does not, by itself, negate a showing of deliberate indifference, *Antonelli, 81 F.3d at 1431,* the policy of "frequent" exterminations in this case, made monthly and in response to plaintiff's requests, certainly cannot support a claim of deliberate indifference here.

Additionally, substantial and uncontroverted evidence in the record shows that Mr. Sain's requests to transfer to the new unit were denied on the basis of permissible, professional justifications. Dr. Wood testified that patients' requests to transfer to the new unit often were denied because of a facility policy that kept those detainees who refused to participate in sex-offender treatment in the old unit. Transfers to the new unit were used as a reward-an incentive to participate in treatment programs.[FN3]Mr. Sain admits that this policy was the explanation given to him after each of his requests for removal, and that he nevertheless refused to participate in treatment.

FN3.*See, e.g., Bd. v. Farnham, 394 F.3d 469, 477 (7th Cir.2005)* ( "[C]onditions of confinement which are reasonably related to a legitimate and non-punitive government goal are not unconstitutional, and we caution that this court will give a high degree of deference to the discretion of prison administration to adopt policies and practices to maintain the safety and security of this country's penitentiaries.") (internal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

quotations omitted).

Moreover, Mr. Sain was HIV positive and had been sexually aggressive. Most rooms in the new unit were double-occupancy rooms. It is certainly within the bounds of reasonable professional judgment to avoid transferring an HIV-positive patient with a history of impermissible sexual behavior with other inmates to a room with another detainee. Mr. Sain offers no evidence to show that this justification was a sham or otherwise impermissible.

In sum, even assuming that Dr. Wood knew of Mr. Sain's complaints about the heat, bugs, paint chips and foul odor, undisputed evidence in the record shows that Dr. Wood's refusal to transfer Mr. Sain was not indicative of "deliberate indifference." Instead, the decision to house Mr. Sain in the old unit (to the extent that Dr. Wood was involved in this decision) was based on a professional judgment as clinical director of the Joliet facility that we cannot say amounted to deliberate indifference. Therefore, even if his living conditions were sufficiently serious to constitute a constitutional violation, Dr. Wood was not deliberately indifferent and therefore cannot be held to have violated Mr. Sain's clearly-established constitutional rights.

**Conclusion**

**\*9** The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED

C.A.7 (Ill.),2008.
Sain v. Wood
--- F.3d ----, 2008 WL 80643 (C.A.7 (Ill.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.